# BANK OF MOBILE *vs.* MEAGHER & CO.

[ACTION TO RECOVER VALUE OF LOST BANK-NOTES.]

1. *Section 2151 of the Code, respecting actions on lost bills and notes, construed.*—Section 2151 of the Code, which provides a remedy on certain instruments lost or destroyed, being a substantial re-enactment of the act of 1828 on the same subject, and, therefore, to be regarded as a legislative adoption of the judicial construction which the former statute had received, does not abrogate any common-law remedy for the recovery of bank-notes lost or destroyed ; nor does the proviso to that section, declaring that it "must not be so construed as to authorize a suit for the recovery of a note or bill issued by any incorporated bank to pass as money, and alleged to be lost or destroyed," amount to an inhibition of an action at law on such lost note or bill.

2. *When action lies on lost or destroyed bank-note.*—An action at law does not lie against a bank, to ·recover the value of a lost note or bill, which, passing from hand to hand by delivery merely, might be presented to the bank by the finder for payment ; but, when a bank-note has been destroyed, thus rendering it impossible that the bank can be made to pay it a second time, the owner at the time of the loss may maintain an action against the bank for its value, and is not compelled to go into chancery.

3. *Sufficiency of complaint in description of bank-notes.*—It is not necessary, in the description of the lost notes on which the suit is founded, to aver their dates, or the time when they were payable : the courts will take judicial notice of the fact, that they were payable on demand.

4. *Identification and proof of contents of lost bank-notes.*—In an action to recover the value of bank-notes lost or destroyed, it is incumbent on the plaintiff to first prove the existence and loss of the notes, and then to adduce proof of their contents ; and proof of their aggregate amount and issue by the bank, without other evidence of their identity and contents, is not sufficient to authorize a recovery.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by T. & J. M. Meagher, suing as partners, against the president, directors and company

of the Bank of Mobile, to recover the value of certain bank-notes, which were destroyed by the burning of the steamboat *Orline St. John* in March, 1850. The complaint was as follows:

"The plaintiffs claim of the defendant the sum of $1400, due on fourteen bills, commonly called bank-bills, made and issued by the defendant, each being for the sum of $100; which said bills were the property of the plaintiffs, and, on the 6th day of March, 1850, were destroyed by fire on the steamboat *Orline St. John*, and were a total loss to the plaintiffs; and being so destroyed, the said plaintiffs afterwards demanded payment of the same of the defendant, which said defendant refused and still refuses to make; wherefore plaintiffs sue, and claim the sum of $1400, with interest thereon.

"The plaintiffs also claim of the defendant the sum of $1400, the amount of certain bills, commonly called bank-bills, made and issued by the defendant, amounting to $1400; which said bills, being the property of the plaintiffs, on the 6th day of March, 1850, were destroyed by fire on the steamboat *Orline St. John*, and were a total loss to the plaintiffs; and being so destroyed, the said plaintiffs afterwards, to-wit, on the 1st day of April, 1850, demanded payment of the same of the defendant, which the defendant then and there refused to make, and still refuses so to do; wherefore the plaintiffs sue, and claim the said sum of $1400, with interest thereon.

"The plaintiffs also claim of the defendant the further sum of $1400, for so much money had and received by the defendant, on the 6th day of March, 1850, for the use of the plaintiffs; which said amount, although the plaintiffs demanded the same, the defendant refused to pay, and still refuses; which said sum, with interest thereon, is still due and unpaid.

"The plaintiffs also claim of the defendant the further sum of $1400, for so much money paid by the plaintiffs, for the defendant, on the 6th day of March, 1850, at the request of the defendant; which sum the defendant refuses to pay, although requested so to do; and the plaintiffs claim interest on said sum, which is now due."

The defendant demurred to each count of the complaint, on the following specified grounds : "1st, that no sufficient cause of action to charge defendant is shown in either of said counts; 2d, that no bill is sufficiently described, in either the first or second count, to warrant a recovery, or to charge the defendant, and no sufficient notice to the defendant is shown, nor demand, nor time, nor particulars; and, 3d, that said third and fourth counts are not sufficiently specific, nor is the complaint set forth with sufficient particularity to entitle the plaintiff to recover." The court sustained the demurrer to the second count, and overruled it as to the others; and the defendant then pleaded the general issue, and the statutes of limitation of three and six years.

On the trial, as appears from the bill of exceptions, the plaintiffs first read in evidence the deposition of one Allen B. Dulany, who testified in reference to the existence and loss of the bank-notes as follows: "I was clerk and book-keeper of the steamer *Orline St. John*, on and prior to the 5th day of March, 1850. Said steamboat was destroyed by fire, on the 5th March, 1850, while navigating the Alabama river, just above Bridgeport in Wilcox county, at or near the plantation of Mark H. Pettway, and on the west side of the river. At the time of the fire, there was in the clerk's office of said steamer, in the drawer of the desk, a large amount of the bills of the Bank of Mobile. I am certain that there was fully $1400 of said bills, and my impression is that there was a larger amount. As clerk of said boat, I was in the habit of making out a cash balance on each trip of the boat, and, in doing so, to state particularly the amount of uncurrent money received, also of the amount of gold, bills of the Bank of Mobile, &c. My recollection of the amount of money, in bills of the Bank of Mobile, on hand at the time said steamboat left Mobile on her upward trip in which she was burned, is about the sum mentioned. I had also collected passage-money in the usual way at the time the fire occurred, but do not know the amount collected." (On cross examination.) "The money on the boat at the time of the fire was in a drawer attached to the clerk's

desk. I am positive in my mind that there must have been fully $1400 of Mobile money in the drawer, which was brought from Mobile in my charge as clerk. The impression on my mind, as to the amount of the Mobile bank-bills, is drawn from my recollection of the cash balance on the former trip. I do not positively remember the entire cash balance which the books showed before leaving Mobile, but I think it was $2,000, or more. When I speak of *current money*, I mean bills of the Bank of Mobile. It was my custom to examine all bills received, and to take such bills on the Bank of Mobile as were signed, 'W. R. Hallett, president,' and 'T. M. English, cashier.' I do not know anything about the dates or numbers of the bills. I do not say positively that they were so signed. I was well acquainted with the currency of the country, or, at least, thought myself so, and believed the bills spoken of to be genuine. No one but myself had access to the drawer; but, of course, I cannot say that no one took out the money."

The plaintiffs also introduced one Cavendish as a witness, who was the bar-keeper on the boat at the time of the fire, and who testified to the facts connected with the burning of the boat; "stating that the fire was very rapid, and the boat soon consumed, and was attended with great loss of life: and detailing circumstances which tended to show that, after the alarm of fire was given, no one had access to the clerk's office." They also proved their ownership of the boat at the time of its loss; that they had afterwards demanded payment of the lost bank-notes, and that the defendant refused to pay. This being substantially all the evidence adduced by the plaintiffs, "the defendant moved the court to exclude all said evidence from the jury, as being insufficient to authorize them, although they might believe it to be true, to find for the plaintiffs; which motion the court overruled."

"The court instructed the jury, upon the foregoing proof, that if they believed that the plaintiffs, at the time when said boat was burned, had and owned any sum consisting of bills issued by the Bank of Mobile, commonly called bank-notes, and were satisfied that such notes or

bills were destroyed by the fire,—then the plaintiffs would be authorized to recover in this suit the amount called for by said bills, with interest on the same from the time of notice and demand made and exhibition of the proof of loss."

" The defendant excepted to this charge, and requested the court to instruct the jury, that no recovery at law could be had for the amount of any bill destroyed, unless the bill could be identified, either by the amount, date, number or description of it. The court refused so to charge, and instructed the jury, that if they were satisfied that the bills were burned, to any amount in value, a recovery could be had to the extent of the amount they believed from the proof was destroyed, although no further description or identification of them was given than that set forth in the deposition of Dulany. To this charge, as well as to the refusal of the charge asked, the defendant also excepted."

The overruling of the demurrer to the complaint, the charges given by the court, and the refusal of the charge asked, are now assigned as error.

GEO. N. STEWART, and GEO. GOLDTHWAITE, for appellant.
THOS. H. HERNDON, contra.

A. J. WALKER, C. J.—One of the questions arising in this case is, whether section 2151 of the Code, which provides a remedy on certain instruments lost or destroyed, abrogates any pre-existing remedy. Our old statute, enacted in 1828, (Clay's Digest, 382, § 9,) was not so essentially different from the latter statute as to afford any reason for a different decision of the question above stated under those two acts. It was decided by this court, that the act of 1828 " must be regarded as furnishing a cumulative remedy, and not as repealing or annulling all others, which were previously recognized at law." Branch Bank at Mobile v. Tillman, 12 Ala. 214; Posey & Coffee v. Decatur Bank, 12 Ala. 802; Bank v. Williams, 13 Ala. 544.

The re-enactment in the Code of the act of 1828, in all

that concerns the question above stated, must be taken as a legislative adoption of the judicial construction, which it had received in reference to that question.—Sartor v. Bank, 29 Ala. 353; Duramus v. Harrison & Whitman, 26 Ala. 326. We therefore decide, that any common-law remedy, which wou'd have been available to the plaintiff in this case, in the absence of a statute, is unaffected by any legislation in this State.

Section 2151 of the Code contains a clause in the following words: "But this section must not be so construed, as to *authorize* a suit for the recovery of a note or bill, issued by an incorporated bank to pass as money, and alleged to be lost or destroyed." This clause does not import an inhibition of all actions at law for the recovery of lost or destroyed bank-bills, nor can such inhibition be implied from its language. The natural effect of the language is merely to exclude the idea, that any action was authorized or given by that section; and a more extended meaning cannot be given to it, without a material addition to its legitimate import.

[2.] Where a bank-bill, which passes from hand to hand by delivery, is merely lost, an action at law cannot be maintained against the bank by the holder at the time of the loss, because the bills might be found and presented to the bank for payment. But this reason totally fails of any application, in the event of the utter destruction of the bills, or in any other contingency which renders a second payment by the bank impossible. The authorities fully sustain the proposition, that the liability of a bank to the holder of its bills is not extinguished by the destruction of the bills, which is but the evidence of the debt; and that after such destruction, an action at law may be maintained by the owner against the bank. In such case, the necessity of indemnifying the bank does not exist; and, consequently, there is no reason for driving the owner of the bills into chancery.—Bank of Mobile v. Williams, 13 Ala. 544; Armat v. Union Bank of Georgetown, reported in 16 Niles' Register, 360; Patton v. Bank, 2 N. & M. 464; Bank of Louisville v. Simmons, 14 B. Monroe, 306; Housdale v. Bank of Orange, 6 Wend. 378;

Wade v. New Orleans Can. and Bank. Co., 8 Rob. (La.) R. 140; Bullet v. Bank of Penn., 1 Wash. C. C. R. 172; Martin v. Bank of United States, 4 Wash. C. C. R. 253; Bank of United States v. Lill, 5 Conn. 106; Bank v. Aersten, 3 Scam. 135.

[3.] The omission of a description of the bills, as to their dates, in the first count of the declaration, was not a fatal deficiency. It is generally sufficient, in pleading, to aver that which is necessary to the plaintiff's recovery. Where the time at which a note falls due is dependent upon its date, it would be material to set forth with certainty the date. And it is necessary, in declaring upon a contract, to aver all that is necessary to give a correct idea of what the contract was, and to furnish the jury with a criterion for the assessment of the damages. 1 Chitty on Pleading, 255, 303. When, in this case, the complaint informs us that the contracts of the bank were fourteen several one-hundred-dollar bank-bills, made and issued by the defendant; that they were the property of the plaintiff, were destroyed by fire, and that a demand was made,—all that is requisite to the maintenance of the action is shown. Neither the right to a recovery, nor the amount of it, is dependent upon the date. The notes were payable upon demand, as we must judicially know, because they were bank-bills.

[4.] The question, as to the degree of certainty with which it is requisite that the destroyed bills should be identified, is new in this court; but the principles by which it is to be determined are of frequent application, and well recognized. This is simply a case where a recovery is sought, upon written contracts, which have been destroyed. The best evidence cannot be produced, and there is a resort to secondary evidence. It was incumbent upon the plaintiff to prove, that the bank-notes once existed. Of that fact slight evidence was sufficient.—1 Greenleaf on Ev. 558. And the proof in this case, on that point, certainly was sufficient. The loss was also proved, with much greater certainty than is usually deemed requisite in making out the proof preliminary to the introduction of parol evidence of the contents of the

destroyed papers. The question remains, then, was there the requisite proof of the contents? The proof discloses nothing more, with regard to the contents of the bills, than that they were of the issue of the Bank of Mobile, and altogether amounted to $1400 at least. The witness does not state even the amounts of the several bills, which collectively made up the sum of fourteen hundred dollars; nor was he able to say positively by whom the bills were signed. This evidence is totally insufficient to prove the contents of the bills. Indeed, it amounts to no proof whatever of their contents. The rule as to the character of evidence requisite to establish the contents of a lost paper, laid down in a note to Greenleaf on Ev. § 558, is, "that the secondary evidence of its contents, or substance of the contents of its operative parts, must be clear and direct." In the case of Tayloe v. Riggs, 1 Peters, 600, Chief Justice Marshall said, when a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every suitor in court, who makes a claim which he cannot support.—See, also, United States v. Button, 2 Mason, 464; Metcalf v. Van Benthuysen, 3 Comstock, 424; Mariner v. Saunders, 5 Gilman, 113; Shorter v. Sheppard, at the present term.

To hold the proof in this case sufficient to establish the contents of the lost papers, would not only be unauthorized by the books, but would, in effect, abrogate the rule requiring proof of the contents of lost papers.

The evidence of the contents of the lost papers being totally insufficient, the court erred in the charges given, because they authorized a verdict for the plaintiff, without proof of the contents of the lost papers; and there was also error in the refusal to charge as requested, for, if there was no identification of the notes in any way, there was no proof of their contents.

The judgment of the court below is reversed, and the cause remanded.