### Ex Parte John Mills.

No. 2876. Decided February 24, 1904.

**1.—Local Option—Constitutional Law.**

The commissioners court are not authorized under the constitutional amendment of 1891 to combine justice precincts, or other subdivisions of a county for the purpose of holding local option elections. Following Ex parte Heyman, 45 Texas Crim. Rep., 532.

**2.—Same—Subdivision of County.**

The constitutional amendment of 1891 simply contemplated authority to hold local option elections in subdivisions not previously mentioned, and it was not intended, by using the word subdivision, to give a different meaning or standing to those already enumerated, or in any manner to qualify them; as these territories could not be combined for election purposes under the Constitution of 1876, it would follow that in bringing them forward it was not intended that they should be combined under this amendment.

**3.—Same—Meaning of Local Option.**

Local option election means recurring elections in the territory specified in the Constitution, and not such as could be combined by the commissioners court; for no such authority is given, and the voters of one precinct can not be used to put the law into operation in another precinct.

**4.—Same—Legislative Power.**

The Legislature may amend the local option law, but this ends their power; it takes the vote of the people of a given territory to put it into operation, and it takes the vote of the same people to end its operation.

**5.—Same—Order of Subdivisions and Election.**

It is evident that the Constitution intended to confine the voting (1) to the county; (2) to a justice precinct; (3) to a town; (4) to a city; (5) to a subdivision, and this conveys the idea of singularity, and not plurality, and that the election should occur from time to time and not continuously, without reference to the time fixed by law; except in case of an election for the entire county, where one or more subdivisions were already under operation of the law, as authorized by the Constitution.

From Van Zandt County.

Original application for habeas corpus for release from an arrest for violating the local option law.

The opinion states the case.

*Kearby & Kearby, C. H. Reese, M. G. Sanders,* and *J. S. Spinks,* for appellant.

*Howard Martin,* Assistant Attorney-General; *Lewis, Rogers, C. L. Potter,* and *Cofers & Thomason,* for the State.

DAVIDSON, PRESIDING JUDGE.—Applicant was arrested for violating the local option law, and resorted to the writ of habeas corpus. The election putting the local option law into effect was held in a portion of the county, composed of all the justice precincts except No. 2. Some of the territory included was already under operation of the local option law. Of the questions presented, we desire to discuss but one, to wit, the authority of the commissioners court to combine justice precincts, or other subdivisions of a county, for the purpose of holding local option elections. We have answered this question in the negative in the recent case of Ex parte Heyman, 45 Texas Crim. Rep., 532. The facts being so nearly similar in the two cases we might perhaps rest the decision of this case on the opinion in that; but desire to make some additional observations.

Local option in Texas is a rather recent innovation upon the manner of putting laws into operation, and can have no existence except as provided in the Constitution. The usual manner in which acts of the Legislature become laws is pointed out by the Constitution; that is, they must pass both houses of the Legislature, must be signed by the speaker of the house and president of the senate, and receive the approval of the Governor; and in case of the Governor's veto, then only by being passed over that veto by the constitutional majority. There is no authority for local option laws outside the constitutional provision; therefore, where local option is sought to be put into operation, the laws under which the vote of the people is taken must be in conformity to the constitutional requirement. Swisher v. State, 17 Texas, 441. Local option legislation of any character with reference to intoxicants exists only by virtue of article 16, section 20 of the Constitution. This was inserted in 1876, and reads as follows: "The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town or city by a majority vote from time to time may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." This was amended in 1891, and is as follows: "The Legislature shall at its first session enact a law, whereby the qualified voters of any county, justice precinct, town or city (or such subdivision of a county as may be designated by the commissioners court of said county) may by a majority vote determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." Under the Constitution of 1876 elections were confined to a county, a justice precinct, town or city.

Under the amendment of 1891 the parenthetical clause "or such subdivision of a county as may be designated by the commissioners court of said county" was added. This authorizes an election to be held in a subdivision of the county. Subdivision, within contemplation of this section, does not refer to the county, justice precinct, city or town. While justice precincts, cities and towns are divisions or subdivisions of a county, the word here is used to point out political subdivisions other than those already enumerated. By bringing these forward from the Constitution of 1876 into the amendment of 1891, it is evident that no change was intended with reference to any of the matters comprehended in the Constitution of 1876. The amendment simply contemplated authority to hold local option elections in subdivisions not previously mentioned; and it was not intended by using the word subdivision to give a different meaning or standing to those already enumerated, or in any manner to qualify them. Words previously used in the Constitution and reordained by amendment are to be taken in the same sense as originally understood; and there would be no change, unless clearly shown by the terms of the amendment. As these territories could not be combined for election purposes under the Constitution of 1876, it would follow that in bringing them forward it was not intended that they should be combined under the Constitution as amended. There is nothing indicating such a purpose in the amendment. On the contrary it was evidently the purpose of that amendment not to convey such meaning. The word subdivision does not mean addition, for if such was the meaning of the framers of the Constitution, a word or words would have been used more appropriate to express that meaning. The local option elections provided for in the Constitution of 1876 necessarily meant for the county, justice precinct, city or town; that it was only within these particularly enumerated territories that such an election could occur. This is emphasized from another expression in the Constitution which required these elections to be from time to time and within the prescribed limits. In fact local option elections means recurring elections and it means recurring elections for the territory specified in the Constitution. Not such as could be combined by commissioners courts, for no such authority is given. If this were not true, it is easily demonstrated that by the process of addition, one precinct could be added to another until there would be two or more elections for one justice precinct, and only one for the other precinct. To illustrate: justice precinct number one is under operation of the law; precinct number two is not. An election held where two or more are combined, resulting favorably to the law, would place two or more elections on one of the precincts, and only one on the latter. Besides, under the combination process the votes of one precinct could be utilized to put the law into operation in another precinct. This would be in direct violation of the Constitu-

tion. The voters of one precinct can not be used to put the law into operation in another precinct. Following up this combination or addition theory to its final analysis, it will be readily seen that there could be eight elections in a county containing that number of justice precincts, the result of which will be eight elections in force on the precinct in which the election was first held and only one election in force on the last precinct for which it was held. This would be a clear and palpable violation of the Constitution.

What is said of justice precincts is equally true as to school districts; for by this theory of addition, fifty elections could be held commencing with school district number one and ending with school district number fifty, if the county contained so many districts: which would place fifty elections on school district number one and only one election on school district number fifty. Such a construction would be obviously absurd. The Constitution does not provide for a perpetual or irrepealable local option. It was only intended to authorize such election for the territories named.

The time for these recurring elections having been fixed at two years, the voters should act under that law, having the right at the expiration of the two years to vote the law in or out of the given territory as the case may be. As the Constitution has limited this to the county, justice precinct, city or town or subdivision, these elections can only be held in and for the territories named. This right can not be taken away by incumbering said territory with the other elections by the addition of other territory. It is well settled that no election can be held for a subdivision of the county while the law is in operation over the entire county. It is equally well settled that an election can not be held in a justice precinct, where the law is in force, until the expiration of the two years provided by law.

Referring to the Elliott case, my brother Brooks, in his dissent in the Heyman case, says: "The construction placed upon it was never dreamed of by any member of this court at the time of its rendition; and this statement will be borne out by the presiding judge of this court." Judge Henderson was absent when the Elliott case was decided, and did not participate in its rendition. If there is a variance between the decisions of this court and the Court of Civil Appeals at Dallas in regard to the question decided in the Elliott case, it is by reason of the decision in Kidd v. Truett, 5 Texas Ct. Rep., 70. Judge Brooks and myself understood at the time the Elliott decision was rendered that it was in direct conflict with Kidd v. Truett. The facts in the two cases are identical and cover the same territory, to wit, school district No. 54 of Grayson County; that school district was partly in justice precinct No. 3 and partly in justice precinct No. 2. Local option was in effect and had been for ten years in precinct No. 3. It was not in force in precinct No. 2. The Court of Civil Appeals

held the law valid in Kidd v. Truett, on a divided court. This court, with Judge Henderson absent, held the law void in Elliott's case. So there was no question as to the conflict. An excerpt from the opinion in Elliott's case shows the position of the court and the points decided: "The fact that the Legislature may alter the provisions of the local option law can not affect territories in which the law is then in force. The law in force in the given territory will stand as its provisions were at the time it was voted into operation, despite subsequent amendments to the law by legislative enactment. The Legislature may amend the local option law, but this ends their power. It takes the vote of the people of a given territory to put it into operation, and it takes the vote of the same people to end its operation. All that portion of school district No. 54 which lies within justice precinct No. 3 was under the operation of the law as it existed on February 1, 1892; therefore the election in school district No. 54 in 1902 could not affect the law as put into operation in justice precinct No. 3, and as to that part of school district No. 54 the election of 1902 was inoperative and void. This being true it would vitiate the election in that portion of the school district, because under the law it is only for the entire school district that such an election can be held, or the law made operative. This would be true whether the act of the Legislature creating subdivisions be valid or invalid. If under section 20, article 16, of the Constitution, the act of the Legislature undertaking to define subdivisions of a county other than justice precincts, cities and towns was invalid, then the commissioners court could not order such an election. If it was valid then it would not relate back so as to affect the territory which was already under operation of the law. * * * The justice precinct could not be subdivided and elections held in each subdivision, and thus by piecemeal, repeal the law in the justice precinct. The statute provides that it must be by vote of the entire justice precinct. To hold otherwise would bring about a state of confusion, and give a construction to the statute which would lead to an absurdity."

Summing up, the Elliott case, it is clear it decides: (1) That the election in school district No. 54 was void. (2) That that portion of school district No. 54 lying inside of precinct No. 3 could not hold an election. (3) That the election could not be held for the whole of the school district No. 54, because a portion of it was in justice precinct No. 3. (4) That that part of the school district No. 54 lying in precinct No. 3 could not be used to make valid an election in that part of school district No. 54 lying in precinct No. 2. (5) That the vote for school district No. 54 must be for the whole of said school district. (6) That the only way to invade that territory with another election was by the same means and in the same manner in which the law was put into operation in said justice precinct No. 3.

If the above propositions are correct, it can not be denied that the vote of part of precinct No. 3 could not be used to vote the law into operation outside of that territory, for it is expressly held that the election in school district No. 54 was void. The validity of this election was the central point in the Elliott case, as it was in Kidd v. Truett, supra; and the election was held void by reason of the fact that that portion of the school district which was in the "dry" precinct could not be used in assisting to put the law into operation in that part of it which was in the "wet" precinct. It is evident that the Constitution intended to confine the voting (1) to the county; (2) to a justice precinct; (3) to a town; (4) to a city; (5) to a subdivision. The words convey clearly and explicitly the idea of singularity and not plurality; and it further provided expressly that within each enumerated territory this election should occur "from time to time." It clearly indicates that the law could not be put twice in force in the justice precinct, in the city, town or subdivision, any more than it could be twice put in operation in the county. However, this does not mean that a county election could not be held where one or more of the subdivisions was already under operation of the law, for such an election is provided for by the Constitution. Ex parte Fields, 39 Texas Crim. Rep., 50; Ex parte Rippey, 68 S. W. Rep., 687. This view is fully confirmed by another expression in section 20, supra, to wit: prohibition must be put in operation "within the prescribed limits." Referring back, from the standpoint of this expression, we find the prescribed limits to be a county, justice precinct, city, town or subdivision; and as before stated, each territory is mentioned in the singular, and this expression "within the prescribed limits," refers to each of them as set out in the Constitution. This language is fully exclusive and leaves no room for inclusion; that is, it limits legislative action to the plain reading of the Constitution. This opinion is in accord with the Heyman case.

The relator is ordered discharged.

*Discharged.*