# MARCH 1910.

## LOVE LEWIS v. THE STATE.

### No. 494. Decided March 2, 1910.

### Rehearing denied April 19, 1910.

**1.—Local Option—Felony—Misdemeanor—Change of Punishment.**

The Act of the Thirty-first Legislature, approved April 24, 1909, p. 396, changing the punishment of a violation of the local option law from that of a misdemeanor to a felony with imprisonment in the penitentiary, does not apply to counties or districts, subdivisions or precincts which had before the adoption of said Act adopted local option. Following Dawson v. State, 25 Texas Crim. App., 670, and other cases.

**2.—Same—Rule of Construction—Legislative Intent.**

When the Legislature revises the statutes of the State, after a particular statute has been judicially construed, without changing the terms of that statute, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute. Following Railway Company v. Railway Company, 68 Texas, 98, and other cases.

**3.—Same—Judicial Construction—Re-enactment of Law.**

The application of the rule when a legislative Act has received a judicial interpretation and is re-enacted in the same terms which have a definite meaning in law that that meaning must be considered to have legislative sanction, applies to the Act of the Thirty-first Legislature, p. 396, and the Legislature must have had such construction in mind when they passed the same.

**4.—Same—Repeal of Law—Former Punishment.**

The Act of the Thirty-first Legislature, p. 396, changing the punishment · of a violation of the local option law from a misdemeanor to a felony, does not repeal the misdemeanor punishment of said law in counties or territory which had theretofore adopted local option.

**5.—Same—Legislative Intent—Re-Enactment of Statute—Legislative Authority.**

The decisions of the Court of Criminal Appeals upon the re-enactment of the local option statute, did not only involve legislative authority but legislative intent and construction as well, and hold that the Legislature must have intended such re-enactment to apply only in counties which should thereafter adopt the law.

**6.—Same—Stare Decisis—Judicial Construction.**

The Legislature in re-enacting the local option statute, by the Act of 1909, must have known and intended that such re-enactment would be construed by the Court of Criminal Appeals in the light of the judicial construction which said court had formerly placed upon it for almost a quarter of a century, and that it would adhere to the doctrine of stare decisis, and could not receive construction by the Supreme Court. Distinguishing Ex parte Dupree, 101 Texas, 150.

**7.—Same—Legislative Intention—Stare Decisis.**

The Act of the Thirty-first Legislature, April 24, 1909, page 396, is, except in respect to the designation of subdivisions, absolutely a literal copy of the Act of March 30, 1887, and leaves no doubt as to the legislative intention that it should receive the construction placed upon it by the Court of Criminal Appeals; and the doctrine of stare decisis therefore applies.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of a violation of the local option law; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*McGrady & McMahon* and *Clarke & Black,* for appellant.—Our local option law being dependent upon a constitutional provision, and the provision of the Constitution authorizing such law being mandatory and specific in its terms, its provisions are an implied prohibition against the Legislature changing the conditions of the law as adopted by a county or a subdivision thereof or changing the punishment of the law so adopted. Article 16, sec. 20, Const. of Texas; Holley v. State, 14 Texas Crim. App., 505; Ex parte Massey, 49 Texas Crim. Rep., 60; Gibbons v. Ogden, 9 Wheaton, 1; Cooley's Const. Lim., 4th ed., p. 78, 5th ed., p. 77, under implications.

When the Legislature has enacted a general law whereby certain localities may adopt it as a local law, and after such law has been adopted by a county, a subsequent Act of the Legislature changing such law in any material manner or making a different penalty, can not apply to such county adopting the law before such Act, and can only apply to counties that may thereafter adopt the local option law. Article 16, sec. 20, Const. of Texas; Articles 3384-3399, Sayles' Civil Statutes; article 402, White's Penal Code; Acts 31st Leg., p. 356; 23 Cyc., 104 (C); Dawson v. State, 25 Texas Crim. App., 670; Robinson v. State, 26 Texas Crim. App., 82; Lawhon v. State, 26 Texas Crim. App., 101; McElroy v. State, 39 Texas Crim. App., 529; Snearley v. State, 40 Texas Crim. App., 507; Ex parte Elliott, 44 Texas Crim. App., 575; Ex parte Heyman, 45 Texas Crim. Rep., 532; Ex parte Massey, 49 Texas Crim. Rep., 60.

*John A. Mobley,* Assistant Attorney-General, and *J. W. Marshall,* Assistant County Attorney, and *A. M. Frazier,* County Attorney, for the State.—It will be noted from reading the indictment in this cause that the amended law is not ex post facto with reference to this case, the offense having occurred since the date of the enactment of said amendment.

Most of the cases holding the view that the Legislature can not affect territories in which the local option law is already in effect, by altering the provisions of the law, are grounded upon the case of Dawson v. State, 25 Texas Crim. App., 670, 8 S. W., 820. A close reading of the latter case will reveal the fact that the question at issue in this cause was not involved in that case. Besides, the reasoning in the Dawson case is readily fallacious. Judge Wilson, after quoting article 16, section 20 of the Constitution, asks the question: "What is the extent of the power conferred upon the Legislature by the foregoing provision?" He might better have asked what limitation was placed

upon the Legislature by the foregoing provision; since it must be admitted that the Legislature may pass any law not prohibited by the Constitution. He answers his own question by saying: "Simply to enact a law enabling the qualified voters of a locality designated, to determine, in accordance with such law, whether the sale of intoxicating liquors shall be prohibited within specified limits." This answer is also incorrect. The Constitution does not limit the Legislature to prohibit the sale of intoxicating liquor in such territory in accordance with such law as may be enforced at the time the people vote upon the question. Again, the people do not determine within themselves in accordance with any law, or by the terms of any law, whether the sale of intoxicating liquors shall be prohibited. The ballots used by the people in local option elections simply have printed on them "For Prohibition" and "Against Prohibition." Revised Statutes, art. 3388. They do not vote on the law. They vote their sentiment with reference to prohibition—for it, or against it—nothing more.

Again, Judge Willson says in the Dawson case: "No power was conferred on the Legislature to prohibit the sale of intoxicating liquors, but such power was vested alone in the qualified voters of the localities named; such power to be exercised by them in the manner to be provided by the Legislature." This is another unfortunate statement, and is not supported by reason. The truth of the situation is no limit was placed on the Legislature as to the means or instrumentalities it might use in prohibiting the sale of liquor, and in carrying out the will and wish of the people. The power of prohibiting the sale of intoxicating liquor is not placed in the people, but it is and must remain in the Legislature, and in the courts.

Another statement made by Judge Willson in the Dawson case is: "It is only by a majority vote of the qualified voters of a locality that the sale of intoxicating liquors within the limits of said locality can be prohibited." He is again wrong, because the majority vote of any particular locality does nothing more than establish the fact, whether it favors or disfavors prohibition in that locality. And it does nothing more than make it possible for the people of that particular locality to enjoy prohibition, should the Legislature at that time have already provided, or may thereafter provide, such enactment as will carry the will and wish of the people into full force and effect. No edifice is stronger than its base, and if the Dawson case fails for want of reason and logic, then it must carry those following it down with it.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Hill County on the 8th day of November of last year, charged with the sale of intoxicating liquors in said county in violation of law on the 25th day of October preceding to one Lee White. At a trial had in said court on the 13th day of December he was convicted, as charged,

and his punishment assessed at confinement in the penitentiary for a period of one year.

Almost the single question presented and the only question which we shall discuss is, in view of the fact that local option had been adopted in said county in 1902, and had not been at any time thereafter voted on, whether appellant could, on conviction for a violation of said law, be punished as for a felony. At the time of the submission of this case, a great number of cases involving the same question were submitted from different parts of the State, and many eminent counsel, both for appellants and the State, on invitation, appeared before us, and discussed the question involved. The interest thus manifested and in view of the importance of the question to the people of this State, and the fact that the personnel of the court has within recent times been so wholly changed, an authoritative expression of the court on the question will be awaited with some interest, we have deemed it important to write at length our views on this matter.

Our opinion is that under the law that the Act of the 31st Legislature, approved April 24, 1909, page 396, does not and can not apply to counties which had theretofore adopted local option. Preliminary to a discussion of the matter, it may be worth while to set out in terms the provisions of the law with reference to punishment thereby provided for the violation of its terms. Section 5 of the Act of the 15th Legislature, page 27, Gammel's Laws of Texas, vol. 8, p. 863, provides as follows:

"When any such election has been held, and has resulted in favor of prohibition, and the aforesaid court has made the order declaring the result, and the order of prohibition, and has caused the same to be published as aforesaid, any person or persons who shall thereafter, within the prescribed bounds of prohibition, sell, exchange or give away, with the purpose of evading the provisions of this Act, any intoxicating liquors whatsoever, or in any way violate any of the provisions of this Act, shall be subject to prosecution, by information or indictment, and shall be fined in a sum not less than twenty-five nor more than two hundred dollars for each and every violation of any of the provisions of this Act."

This Act was approved June 24, 1876, and took effect ninety days after adjournment. It remained the law of this State until the Act of the Twentieth Legislature, passed March 30, 1887, p. 70. See Gammel's Laws of Texas, vol. 9, p. 868. The Act prescribing punishment for violation of the penal law in selling intoxicating liquors in violation of such law as fixed and provided therein is as follows:

"If any person shall sell any intoxicating liquor in any county, justice precinct, city or town in which the sale of intoxicating liquor has been prohibited under the laws of this State, or if any person shall give away any intoxicating liquor in any such county, justice precinct, city or town with the purpose of evading the provisions of said laws, he shall be punished by fine of not less than twenty-five nor more

than one hundred dollars, and by imprisonment in the county jail for not less than twenty nor more than sixty days."

By the terms of the Act of the Thirty-first Legislature, page 356, the following provision was established for the punishment of offenders against the local option law:

"If any person shall sell any intoxicating liquor in any county, justice precinct, school district, city or town, or subdivision of a county, in which the sale of intoxicating liquors has been prohibited under the laws of this State, or if any person shall give away any intoxicating liquor in any such county, justice precinct, school district, city or town, or subdivision of a county with the purpose of evading the provisions of said law, he shall be punished by confinement in the penitentiary not less than one nor more than three years."

It will be seen that the provision of the Thirty-first Legislature is literally a reproduction of the Act of the Twenty-second Legislature, approved March 30, 1887, except that it uses rather different language (conforming to the present law) with reference to the subdivisions of a county wherein the sale of intoxicating liquors has been prohibited; and it is for this reason that we have thus set out at length the different provisions of the Legislature.

The first time the question here involved, in substance, came before this court was in the case of Dawson v. State, 25 Texas Crim. App., 670. This decision was rendered by this court when composed of Judges White, Hurt and Willson, and was rendered on the 2d day of June, 1888. While it does not involve the precise question here raised, ·in principle, the rule there announced is conclusive of the question before us. That decision carries intrinsic evidence of the fact that it was carefully considered, and that the arguments in behalf of the State now urged upon us were probably with equal force urged upon the court there. Presiding Judge Davidson, of this court, was then Assistant Attorney-General of this State, and represented the State before this tribunal. From his brief preserved in the official report of the case we note that he submitted the following proposition: "While section 20, article 16, of the State Constitution, confers upon the people the right to determine this question in their respective localities, at the same time it vests the Legislature with the power of regulating the manner and time of exercising this right. The power to determine the question is governed by the law in operation at the time the people of any particular locality attempt to exercise it. The Legislature at its· last session having, in conformity with the Constitution, provided the ways and means of doing so, it follows that those who would avail themselves of the constitutional privilege must comply with the law upon the subject in operation at the time the vote is taken. When local option has been adopted, it is not simply for one year, but for all time, or until the people by their vote, taken in the manner as provided by law, revoke it. The fact that at the time local option was adopted it could, under the law then in force, be revoked in one year, conferred

no right which would preclude the Legislature from changing the time to two years. A citizen has no vested right in statutory privileges. (Cooley's Const. Lim., page 479.) It was perfectly competent for the Legislature to change the time. Such legislation is not retroactive or retrospective as contemplated by section 16, article 1, of the State Constitution. The term retroactive in the bill of rights was designed to embrace laws which are not included in the description of ex post facto, or laws impairing the obligation of contracts, but which destroy or impair vested rights. Laws which affect the remedy or procedure merely are not within the scope of the inhibition against retroactive laws, unless the remedy be entirely taken away, or so encumbered with conditions as to render it useless or impracticable. (DeCordova v. Galveston, 4 Texas, 470, and cases cited in footnote; Morris & Cummings et al. v. Gussett et al., 62 Texas, 729; Langville v. State, 4 Texas Crim. App., 312; Rowland & Bro. v. State, 12 Texas Crim. App., 418.) The recent Act upon the subject of local option elections does not destroy or impair any vested right; neither does it take away any remedy or right of procedure. It simply regulates the manner of exercising the right, by extending the time from one to two years in which elections may reoccur." In view of the argument thus made, and answering the position then assumed and now urged upon us, Judge Willson, speaking for the court, uses this language: "Section 20 of article 16 of the Constitution provides as follows: 'The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.' What is the extent of the power conferred upon the Legislature by the foregoing provision? Simply to enact a law enabling the qualified voters of the localities designated to determine, in accordance with such law, whether the sale of intoxicating liquors shall be prohibited within specified limits. No power was conferred upon the Legislature to prohibit the sale of intoxicating liquors, but such power was vested alone in the qualified voters of the localities named—such power to be exercised by them in the manner to be provided by the Legislature. It is only by a majority vote of the qualified voters of a locality that the sale of intoxicating liquors within the limits of said locality can be prohibited. Hence is derived the common name of the law upon the subject, that is, the 'Local Option Law.' While it is a general law in the sense that it may be adopted in any portion of the State, it is nevertheless in its effect and operation, when adopted, essentially local, deriving its force directly and entirely from the will of the qualified voters of the locality in which it is adopted, and continues in force in such locality until it is abrogated by the will of said voters declared in the manner provided by law. This will, this power on the subject, is absolute and exclusive in the qualified voters of the locality, to be declared and ex-

ercised by them, in accordance with the law enacted in pursuance of the provision of the Constitution we have quoted.

"Now, the will of the qualified voters having been ascertained and duly and legally declared, what power has the Legislature to interfere with that will—to substitute in its place its own will materially variant from that expressed by the voters in adopting the law? If the power exists in the Legislature to deprive the locality of the right to have another election, for the period of two years, the same exists to deprive them of such right for ten, twenty or other number of years, and thus the Legislature would fasten upon the locality a law which they adopted merely as an experiment for a short period of time, and from the practical operation of which, during that period, they may have become convinced should be repealed, never imagining, when they voted upon the issue, that the Legislature would, or could, continue the law in operation in opposition to the will of a majority of the qualified voters of the locality. They, the qualified voters, enacted the law; it is their creature, called into existence by their direct agency, and they alone have the supreme and exclusive power, by a majority vote, to repeal it. It is not within the power of the Legislature to add to or take from, or in any manner infringe upon the law as adopted by the will of the voters—or even, in our opinion, repeal it in that particular locality. Whenever the law has been legally adopted by any particular locality, the subject has passed beyond the domain of legislative action, so that a different law can not, without the sanction of the qualified voters of that locality, given in a legal manner, be imposed upon such locality.

"Our view is that the amendatory Act of July 4, 1884, in each and all of its provisions, was intended to and does operate only in localities which have adopted it since it went into effect, or may hereafter adopt, local option in accordance therewith, and that said provisions can not and do not, and were not intended to, operate in localities which, prior to their going into effect, had voted upon and adopted the law as it was prior to such amendatory provisions. Any other view, it seems to us, would invade the constitutional rights of the people of such localities and foist upon them a law which, perhaps, they never would have adopted, a law with respect to their 'option' had never been consulted or ascertained; a law enacted not by them, but by the Legislature, without constitutional right."

The decision in that case has been many times questioned and often assailed, but has remained the settled rule of this court from that' day until this, and has been in terms applied by the court to the very question here raised.

In the case of Robinson v. State, 26 Texas Crim. App., 82, it appeared that the act of selling intoxicating liquor for which Robinson was convicted was committed on the 6th day of February, 1888. The election at which the local option law was adopted in Wise County was held on the 14th day of March, 1887. Robinson's trial was had

and he was convicted on the 11th day of April, 1888. The Act of the Legislature, as we have seen, changing the punishment for a violation of this law, was approved March 30, 1887. In this state of the case the court, speaking through Judge Hurt, say:

"It will be seen from the above statement that the people of Wise County adopted the law as it stood before the amendments were made by the Legislature, and that the offense was committed and the trial had after such amendment had been enacted.

"The court charged the penalty prescribed by the amendment of March 30, 1887. This court, at this term, has held that, when the people of a certain locality have adopted the local option law at an election held before the amendment was passed, such amendment was not intended to, and can not affect the law as it existed in such locality prior to the amendment. (See Dawson v. The State, 25 Texas Crim. App., 670.) The amended law will be in force and operate in such localities only as since its passage may, by election, adopt its provisions. This decision is decisive of this case." Thus, in terms, applying the principle laid down in the Dawson case as to the matter of punishment and to the very question here raised.

The next case involving the correctness of the Dawson case, supra, was that of Lawhon v. State, 26 Texas Crim. App., 101. In that case it appeared that the local option law in Cherokee County, the violation of which was claimed, was adopted in March, 1886. The indictment against Lawhon was filed January 13, 1888, alleging an offense to have been committed on December 28, 1887, and the court below trying the case, without a jury, assessed the punishment of Lawhon under the provisions of the Act of the Legislature, approved March 30, 1887, amending the local option law and making the punishment more onerous. This the court held was erroneous. It is there stated: "In the case of Robinson v. The State, ante, 82, this court held that when the people of a certain locality have adopted the local option law at an election held before the amendment was enacted, such amendment does not affect the law as it existed in such locality prior to the amendment. The amendment will only operate in such localities as since its passage may, by election, adopt its provisions. (Dawson v. The State, 25 Texas Crim. App., 670.) This opinion was delivered October 10, 1888.

The next case in point of time involving this question was that of Ex parte Cox, 28 Texas Crim. App., 537, in which the court, in upholding the local option election theretofore adopted in Camp County, sustained and reaffirmed the Dawson case, supra. This decision was rendered on May 28, 1890, and the judges composing this court were the same as those who sat in the Dawson case, supra.

The Dawson case was again in terms approved by this court in Ex parte Bains, 39 Texas Crim. Rep., 62, where a liberal quotation is made from the Dawson case, and the court, speaking through Judge Davidson, say: "When applied to local option laws of the character

of the one under consideration, we do not believe this reasoning can be successfully answered." At this time this court was composed of Judges Hurt, Davidson and Henderson. While the authority of Ex parte Bains was, in respect to the particular matter there considered, somewhat questioned in the case of Snearley v. State, 40 Texas Crim. Rep., 507, by Judge Brooks, who had in the meantime succeeded to a position on this bench, he in express terms approved and reaffirmed the rule laid down in the Dawson case, among other things, saying: "It will be seen from this excerpt from Dawson v. State, and an examination of the other two authorities cited on the question, that these decisions were rendered in cases where an effort was being made to ingraft amendments on the local option law—upon the old local option law as the same had theretofore been adopted by the respective counties or precincts. To the correctness of this we assent, and the decisions upon the points at issue were clearly within the line of precedents, and in strict consonance with reason, but dissent from the conclusion reached in Ex parte Bains."

Again, in the case of McElroy v. State, 39 Texas Crim. Rep., 529, the rule laid down in the Dawson case, and cases following it, was approved. It is barely possible that this case might be distinguished since it rests on a different provision of our Constitution, but the case does recognize in terms the correctness of the Dawson case and other cases following it.

The question again came before this court in the case of Ex parte Elliott, 44 Texas Crim. Rep., 575, where it was held that where local option had been adopted for an entire justice precinct, it can not be repealed by subsequent legislative enactment as to any subdivision of any precinct of the territory embraced therein, by the creation of a new school district subdivision partly including such justice precinct together with other territory. Speaking for the court, Judge Davidson uses this language: "It is contended the election in school district No. 54 is invalid, because under the law as it then existed, such subdivisions as school district No. 54 were unknown, and, under this condition, the law was put into operation in the entire justice precinct No. 3, and that no subsequent legislation could affect the law as in force in justice precinct No. 3; that the Legislature has no power to repeal the law in force in any given territory; that this must be by the voters living in that territory. We believe this proposition sound. Such we understand to be the doctrine of Dawson v. State, 25 Texas Crim. App., 670; Aaron v. State, 34 Texas Crim. Rep., 103; Adams v. Kelly, 44 S. W. Rep., 529." This decision was rendered March 18, 1903.

Still later, in the case of Medford v. State, 45 Texas Crim. Rep., 180, 74 S. W. Rep., 768, the same rule is announced. It is there stated that "The Commissioners Court unquestionably have the authority to change the territorial limits of justice of the peace precincts, and they also have authority to create subdivisions for local option pur-

poses, but they have no authority to in any event change the territory where the local option law is in force so as to nullify the operation of that law or take any portion of such territory from under its operation."

The same rule is followed in Woods v. State, 75 S. W. Rep., 37. While in these last two cases the Dawson case is not cited by name, the principle therein laid down is recognized and followed.

In the still later case of Ex parte Fields, 86 S. W. Rep., 1022, delivered on the first day of March, 1905, the Dawson case is again by name cited and approved. Some contention in that case was made that the later cases of Ex parte Heyman, 45 Texas Crim. Rep., 532, 78 S. W. Rep., 349, and Ex parte Mills, 46 Texas Crim. Rep., 224, 79 S. W. Rep., 555, had overruled the doctrine announced in Dawson v. State, supra, which had been theretofore followed in Medford v. State, and Ex parte Elliott heretofore noted. Responding to this suggestion, Judge Henderson, speaking for the court, uses this language: "The proposition is clearly announced in the last mentioned case (Ex parte Elliott, 44 Texas Crim. Rep., 575, 72 S. W. Rep., 837, 7 Texas Ct. Rep., 59), that local option once adopted in a given territory remains the law of that territory until it is repealed by the voters of the same territory, and we know of no conflict between those opinions and the decisions before referred to upon the question stated."

In the very recent case of Ex parte Pollard, 51 Texas Crim. Rep., 488, 103 S. W. Rep., 878, rendered by this court on the 22d day of May, 1907, the principle which we have been discussing was last announced by this court where Judge Davidson, speaking for the court, says: "This proposition of appellant is also erroneous from another standpoint, to wit: wherever a local option law is once legally put into operation in a given territory, it must remain in force until it has been voted out by the voters of the territory where such law was originally vitalized."

We have thus reviewed, at more length than might ordinarily seem either desirable or necessary, the decisions of this court, which, for almost a quarter of a century, through many changes of the personnel of its members, have uniformly and without dissent held to the proposition that it is not within the power of the Legislature to impose upon a community which had theretofore adopted the local option law, penalties and forfeitures which did not exist at the time of such adoption, and which rule had many times, by line upon line and precept upon precept, been enforced and established. In the recent case of Ex parte Dupree, 101 Texas, 150, by our Supreme Court that great tribunal evidently took quite a different view of the question, and their position is stated with great force, as follows:

"Section 20 of article 16 of the Constitution of this State is in this language: 'The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice's precinct, town, city or such subdivision of a county as may be designated by the Com-

missioners Court of said county, may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.' The objection that the law under investigation goes beyond the limits prescribed by the Constitution is based upon the idea that the people of the particular locality vote upon and adopt the local option law itself, whereas by the plain and unmistakable terms of the Constitution the Legislature is required simply to enact a law by which the people of the territory or subdivision may vote upon the question of whether the sale of intoxicating liquors shall be prohibited within that territory. The Legislature could have enacted the law simply submitting this question to the vote of the people and subsequently have enacted the law which they did in order to carry the result of that vote into effect; or the Legislature might have, as they did, enacted a general law upon the subject with a provision that it should become operative in any of the subdivisions named in the Constitution when the people had voted in favor of prohibiting the sale of intoxicating liquors within that subdivision. The Constitution does not require the Legislature to submit to the vote of the people the law which is necessary to enforce prohibition, and it has not been done; that is a proper subject for legislative action. It has been held in this State that the Legislature can not go beyond the limits of the Constitution and prohibit the giving away of liquors within the prescribed territory, but that does not in the least interfere with nor limit the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on that subject. The law in question is not subject to the objection urged. The Act of April 5, 1907, was in force in Brown County."

2. There is, however, another rule well understood among lawyers, and of such general acceptance as to admit of no controversy, which it would seem in fairness would compel a holding adverse to the views of the State. That rule is thus stated in Black on Interpretation of Laws, page 369: "When the Legislature revises the statutes of the State, after a particular statute has been judicially construed, without changing that statute, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute." Gulf, C. & S. F. Ry. Co. v. Fort Worth & N. O. Ry. Co., 68 Texas, 98, 3 S. W., 564; Anthony v. State, 29 Ala., 27; Duramus v. Harrison, 26 Ala., 326; Smith v. Smith, 19 Wis., 522; Scheftels v. Tabert, 46 Wis., 439, 1 N. W., 156; Posey v. Pressley, 60 Ala., 243. The same rule is thus stated in Sutherland on Statutory Construction, p. 336: "In the interpretation of reenacted statutes the court will follow the construction which they received when previously in force. The Legislature will be presumed to know the effect which such statutes originally had, and by reenactment to intend that they should again have the same effect." O'Byrnes v. State, 51 Ala., 25; Ex parte Roundtree, 51 Ala., 42. There is found in the American and English Encyclopedia of Law, vol. 26, p. 650, this excellent statement of the rule;

"When an Act or part thereof which has received a judicial interpretation is reenacted in the same terms, or where words used in a statute have a definite and well known meaning in law, that construction or that meaning must be considered to have the sanction of the Legislature unless the contrary appears." In support of this rule, the following authorities are cited: Mansell v. Reg., 8 El. & Bl., 93, 92 E. C. L., 93; Ex parte Campbell, L. R., 5 Ch., 701; Ex parte Thorne, 3 Ch. D., 457; Ex parte Attwater, 5 Ch. D., 27; Bustros v. White, 1 Q. B. D., 423; Dale's case, 6 Q. B. D., 376; Barlow v. Teal, 15 Q. B. D., 403; McCurdy v. McRae, 23 Nova Scotia, 43; Halifax Pilot Com'rs v. Farquhar, 26 Nova Scotia, 333; U. S. v. Mooney, 116 U. S., 104; U. S. v. Central Pac. R. Co., 118 U. S., 235; U. S. v. LeBris, 121 U. S., 278; In re Guggenheim Smelting Co., 121 Fed. Rep., 153; The Devonshire, 13 Fed. Rep., 39; U. S. v. Trans-Missouri Freight Ass'n, 58 Fed. Rep., 58, 19 U. S. App., 36; Duramus v. Harrison, 26 Ala., 326; Ex parte Banks, 28 Ala., 28; Anthony v. State, 29 Ala., 27; Glass v. State, 30 Ala., 529; Mobile Bank v. Meagher, 33 Ala., 622; O'Byrnes v. State, 51 Ala., 25; Ex parte Roundtree, 51 Ala., 42; Ex parte Matthews, 52 Ala., 51; Woolsey v. Cade, 54 Ala., 378, 25 Am. Rep., 711; Huddleston v. Askey, 56 Ala., 218; Posey v. Pressley, 60 Ala., 243; Morrison v. Stevenson, 69 Ala., 448; Snider v. Burks, 84 Ala., 53; Barnewall v. Murrell, 108 Ala., 366; McKenzie v. State, 11 Ark., 594; People v. Webb, 38 Cal., 467; In re Baker, 55 Cal., 302; Eck v. Hoffman, 55 Cal., 501; Harvey v. Travelers' Ins. Co., 18 Colo., 354; McGann v. People, 194 Ill., 526; State v. Swope, 7 Ind., 91; Indianapolis, etc., R. Co. v. Guard, 24 Ind., 222, 87 Am. Dec., 327; Anderson v. Bell, 140 Ind., 375; State v. Brewer, 22 La. Ann., 273; Myrick v. Hasey, 27 Me., 9, 46 Am. Dec., 583; Cota v. Ross, 66 Me., 161; Tuxbury's Appeal, 67 Me., 267; Harpswell v. Cumberland County, 78 Me., 100; McKee v. McKee, 17 Md., 352; Com. v. Hartnett, 3 Gray (Mass.), 450; Grace v. M'Elroy, 1 Allen (Mass.), 563; Cronan v. Cotting, 104 Mass., 245, 6 Am. Rep., 232; Low v. Blanchard, 116 Mass., 272; Collins v. Wilhoit, 35 Mo. App., 585; Kelly v. Thuey, 143 Mo., 422; Gould v. Wise, 18 Nev., 253; Tomson v. Ward, 1 N. H., 9; Mooers v. Bunker, 29 N. H., 420; Frink v. Pond, 46 N. H., 125; Matter v. Murphy, 23 N. J. L., 180; Perkins v. Smith, 116 N. Y., 441; Hakes v. Peck, 30 How. Pr. (N. Y.), 104; Erhard v. Kings County, 36 N. Y. Supp., 656; Bridgers v. Taylor, 102 N. Car., 86; Gray v. Askew, 3 Ohio, 466; Turney v. Yeoman, 14 Ohio, 207; Grogan v. Garrison, 27 Ohio St., 50; Bulkley v. Stephens, 29 Ohio St., 620; State v. Jackson, 36 Ohio St., 281; Evans v. Ross, 107 Pa. St., 231; Gonder v. Estabrook, 33 Pa. St., 374; Com. v. Lehigh Valley R. Co., 104 Pa. St., 89; Munson v. Hallowell, 26 Texas, 475, 84 Am. Dec., 582; Timmins v. Bonner, 58 Texas, 554; Sanders v. Bridges, 67 Texas, 93; Hussey v. Moser, 70 Texas, 42; Cooper v. Yoakum, 91 Texas, 391; Mangus v. McClelland, 93 Va., 786; Daniel v. Simms, 49 W. Va., 554; Harrington v. Smith, 28 Wis., 43; White v. State, 134 Ala., 197; Hilliker v.

Citizens St. R. Co., 152 Ind., 86; Camp v. Wabash R. Co., 94 Mo. App., 272; State v. Cornell, 54 Neb., 647; Kendall v. Garneau, 55 Neb., 403.

This rule was early recognized in Texas as is discovered by an examination of the case of Ennis v. Crump, 6 Texas, 34, where the rule is more broadly stated even than necessary to sustain our position. In that case there had been, unlike the case at bar, some slight change in the phraseology of the reenacted statute. Speaking of the interpretation to be given the reenacted statute, Judge Wheeler, speaking for the court, says: "This statute was not intended, we think, to change the rule upon this subject as understood and practiced under the former law. That the mere change of phraseology in the revision of a statute before in force will not work a change of the law previously declared, unless it indisputably appear that such was the intention of the Legislature, has been expressly decided. (2 Cain. Cas. Ev., 143; 4 Johns R., 317; 21 Wend. R., 316; 2 Hill (N. Y.) R., 380.) No such intention is manifested in the present instance." To the same effect is the declaration of our Supreme Court in the case of Cargill v. Kountze, 86 Texas, 386. In that case, speaking for the court, Judge Gaines says: "When the Legislature reenacts a statute which has been construed by the courts, the presumption is that it intended that the new enactment shall receive the same construction as the old. The rule is universal, and is conclusive of the question under consideration."

In the case of Supreme Council A. L. H. v. Anderson, 83 S. W. Rep., 207, there is this apt statement of the rule: "And it is a familiar rule that when the Legislature adopts a statute in force in another State, or reenacts a statute formerly in force in the particular State, it will be presumed that the construction formerly placed upon the statute by the court of last resort was known to the Legislature, and that in reenacting the statute it was the legislative intent that it should have the meaning so placed upon it by the courts." Indeed, the rule is so thoroughly settled not only in this State, but in practically every court of last resort throughout the country, and has so universally and unqualifiedly received the sanction and approval of the most eminent text writers as to admit of neither doubt nor difficulty. If it could be claimed that the application of this rule may be doubted in this case for the reason that our Supreme Court had in Ex parte Dupree, supra, expressed an opinion at variance with the settled holding of this court, the reply is evident and conclusive that it must have been understood by and known to the Legislature that this statute would and must be construed by this court, and that in the nature of things it could never receive construction by our Supreme Court. It was urged in argument that since the Act in question by terms substitutes its provisions for the law theretofore in force, if we should hold that the imposition of the punishment prescribed in the Act in question could not be applied in counties which had theretofore adopted local option, it would result in a total repeal of the punishment for the

violation of law in such counties, and that there would be no penalty for violation of the local option law in counties which had adopted same prior to the passage of the Act under consideration. If this were true, we should be confronted with a very serious situation, but under the decisions of this court the very opposite of this construction has been adopted, and we have uniformly enforced the penalties of the Act of 1876 in counties which had adopted local option prior to the passage of the Act of March 30, 1887. Again, it has been suggested in argument that the rule which we have just been discussing, in reference to the legislative intent in respect to reenacted statutes, can have no application here for the reason that the decision in Dawson v. State, supra, did not involve the construction of a statute, but went to the effect of holding that the Legislature was without power to pass such statute at all. While the holding of the court in the Dawson case did rest its decision upon the question there presented to a large extent on the proposition of lack of legislative authority, yet a careful reading of the opinion will disclose that the very question decided in the cases cited above did involve a legislative construction of the two Acts, and that by express decision it was held that the Legislature must have intended the Act of March 30, 1887, to apply only in counties which should thereafter adopt the law. Recurring for a moment, we again quote the following portion of the opinion of the court in the Dawson case: "Our view is that the amendatory Act of July 4, 1884, in each and all of its provisions, was intended to and does operate only in localities which have adopted since it went into effect, or may hereafter adopt, local option in accordance therewith, and that said provisions can not and do not, and were not intended to, operate in localities which, prior to their going into effect, had voted upon and adopted the law as it was prior to such amendatory provisions." Therefore, it must follow that a Legislature knowing, as we must assume they did know, that this statute would be construed by this court would understand that we would of necessity give the statute the same interpretation and construction which had been uniformly placed on it for almost a quarter of a century. It will be noted further in the copy which we have herein made that the statute enacted in 1909 is, except in the respect that it conforms in the designation of subdivisions to the present law, an absolutely literal copy of the Act approved March 30, 1887. This literal copy of the former statute could in this case, it would seem, leave no sort of doubt as to the legislative intention that it should receive the construction which time out of mind had been placed upon it by this tribunal. Therefore, unless we were prepared to break away from the settled holding of this court since the days of Dawson v. State, supra, and unless we should feel at liberty to disregard the settled rule of construction just stated, we are bound and committed by every rule of law which could influence and control the action of a just judge, to hold, as we now do hold, that the Act in question does not affect or change the penalty for violation of the local

option law in counties or subdivisions thereof which had adopted such law before the passage of the Act in question. That it would be competent for the Legislature to make the sale of intoxicating liquors a felony in counties thereafter adopting it, can not be doubted; nor is that proposition an issue here. It becomes, therefore, unnecessary for us to decide whether the decisions of this court in the cases of Dawson v. State, Robinson v. State, and Lawhon v. State, were correct. Some effort was made in argument to distinguish the decision in the Dawson case, and to hold that the rule there established did not and could not apply to the matter of change of punishment. It seems to us, however, that it is indeed a rash assertion to assume that the great men who delivered the opinions of the court in Robinson v. State, and Lawhon v. State, did not understand what was decided by them but a few months before in the Dawson case. There has seldom existed in this State or elsewhere a greater court than this when its ermine was worn and adorned by Judges White, Hurt and Willson. No court has, and it is not a vain prophecy to assert, no court in this State ever will, to a greater extent command, or more richly deserve the confidence and respect of a free people than did this court when these great men sat upon it. They have indeed, not only in this State, but among all English speaking people where liberty is yet loved and law yet revered, wrought for themselves "a far more exceeding and eternal weight of glory" than we may hope to achieve. Their judgment and opinion have since been followed, adopted and enforced in this State "without variableness or shadow of turning." With knowledge of such uniform, consistent and settled rules and decisions, the Legislature has literally reenacted the statute of March 30, 1887, using the identical language of that statute except in the sole matter of the punishment to be imposed. If the doctrine of stare decisis could ever be held to apply in the construction of criminal statutes, it must find application here. If the rule adopted by the court heretofore were such as to debase and corrupt society or to impose burdens on our people amounting in effect to a denial of life, liberty or the pursuit of happiness, it would be a different matter. But we have no such question. We have found it, therefore, unnecessary to state our own opinion. For the reasons given here, we feel that at this late date to sweep aside the established rule and unsettle the law still further would be, if not judicial usurpation, at least without sufficient warrant in law and utterly inexcusable and to proclaim ourselves as unworthy to sit on this high tribunal. It should never be forgotten that this is a land where the law reigns supreme. Uniformity and certainty of decision is of the highest importance. We are not so much to declare our personal views of what the law ought to be, but to lay down with as much definiteness and certainty as may be, what it is, and when so adjudged, to enforce it with inflexible fidelity without passion and without weakness. If coming to this high position of power and responsibility I may, moved by a mere personal opinion, in my day and time, unsettle and undo the work of

the great men who have preceded me, consistent, coherent and undoubted from the day when I was yet a briefless lawyer, the man who on the morrow takes my place will have the same warrant to undo and unsettle the rules we establish and so on to the end of time. So that from having a country governed, controlled and regulated by law, we shall have a land where the mere personal opinions of the judge in office at the time shall rule the fortunes and control and mar the destinies of a free people, and by force of an election where such punishment was never considered, condemn the citizen to penal servitude as a felon for an act not held to be such under the decisions of this court time out of mind. Against this doctrine of personal rule and unrestrained absolutism we resolutely set our faces and prefer to follow the law as it has been so long and so often declared, conscious of our responsibility, and saying with all sincerity of the law that it must and will be upheld, and that though it slay me yet will I trust in it.

Let the judgment be reversed and the cause remanded for proceedings in a tribunal having jurisdiction of the offense.

*Reversed and remanded.*

[Rehearing denied April 19, 1910.—Reporter.]