IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NOS. PD-826-06, PD-827-06, PD-828-06, PD-829-06, 

PD-830-06, PD-831-06, PD-832-06, PD-833-06






THE STATE OF TEXAS


v.


JOHN DOMINICK COLYANDRO, JAMES WALTER ELLIS, and

THOMAS DALE DELAY, Appellees




ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Keasler, J., delivered the opinion of the Court in which Keller, P.J., and Price,
Womack, and Hervey, JJ., joined. Keller, P.J., filed a concurring opinion in which Price,
J., joined. Price, J., filed a concurring opinion. Cochran, J., filed a dissenting opinion in
which Meyers, Johnson, and Holcomb, JJ., joined. 


O P I N I O N 



 Charged with conspiracy to violate certain provisions of the Election Code, John
Dominick Colyandro, James Walter Ellis, and Thomas Dale Delay moved to quash the charges.
They contended that the State failed to allege an offense based on our prior decisions
implicitly holding that the offenses defined in Title 4 of the Penal Code, which includes the
criminal conspiracy statute, do not apply to offenses defined outside the Penal Code. The trial
judge agreed and quashed the charges. The State appealed, and the Third Court of Appeals,
bound by our prior holdings, affirmed. The State then petitioned for review, arguing that the
lower court erred because our prior decisions can be distinguished or should be overruled. We
hold that our prior decisions are not subject to distinction and, after examining the
Legislature's actions following those decisions, we adhere to our precedent and affirm the
Court of Appeals's judgment. I. Procedural Background In 2005, two Travis County grand juries presented indictments charging Colyandro,
Ellis, and Delay with, among other things, conspiracy to violate the Election Code. In the third
count of an indictment returned by a grand jury to the 147th Judicial District Court on
September 13, 2005, Colyandro and Ellis were charged with conspiracy to make an unlawful
political contribution in violation of Texas Penal Code Section 15.02 and Sections 253.003(a),
253.094(a), and 253.104 of the Election Code on or about September 13, 2002. An
indictment returned on September 28, 2005, to the 147th Judicial District Court charged
Colyandro, Ellis, and Delay with conspiracy to make an unlawful political contribution in
violation of Section 15.02, Penal Code, and Election Code Sections 253.003, 253.094, and
253.104 on or about September 13, 2002. Finally, a two-count indictment was returned on
October 3, 2005, to the 403rd Judicial District Court. The first count of the indictment, which
presented two charges, alleged in part that Colyandro, Ellis, and Delay conspired to make an
illegal political contribution to a candidate for the Texas House of Representatives in violation
of Section 15.02 of the Penal Code and Subchapter D of Chapter 253 of the Election Code "on
or about and between the sixth day of September, A.D., 2002, and the fourth day of October,
A.D., 2002[.]"

 Colyandro, Ellis, and Delay moved to quash these charges, contending that they did not
allege an offense under Texas law. Relying on our decisions in Moore v. State (1) and Baker v.
State, (2) Colyandro, Ellis, and Delay argued that Section 15.02 of the Penal Code--the criminal
conspiracy statute contained in Title 4 of the Penal Code--did not apply to Election Code
violations in 2002.

 In Moore, the appellant was convicted in 1975 under the newly-enacted 1974 Penal
Code of "attempting to obtain a controlled substance by fraud." (3) On appeal, the appellant
claimed that the indictment was fatally defective because the Penal Code's criminal attempt
provision, Section 15.01(a), located in Title 4, did not apply to the Controlled Substances Act. (4) 
Finding that Section 1.03(b) of the Penal Code specified that only Titles 1, 2, and 3 of the
Penal Code were applicable to offenses defined outside the Penal Code, we held that the
attempt statute did not apply to the Controlled Substances Act. (5) Responding to the State's
argument "that the Legislature intended for the criminal attempt provision . . . to apply to the
Controlled Substances Act[,]" (6) we noted that the Legislature omitted any attempt provision
when it enacted the Controlled Substances Act shortly before enacting the new Penal Code
even though it had retained such a provision in the Dangerous Drug Act. (7) We stated: 

 we cannot agree that the Legislature in enacting the Controlled Substances Act
. . . made such omission with the knowledge that the new Penal Code (effective
four months after the Controlled Substances Act) would make the necessary
provisions for making any attempt to violate any provisions of the Controlled
Substances Act a criminal offense. (8)


 Less than five months later, in Baker, we held that the Penal Code's criminal conspiracy
statute did not apply to the Controlled Substances Act. (9) Following Moore, we concluded:
"Since the criminal conspiracy provisions of . . . Penal Code, Sec. 15.02 are also contained in
Title 4 of the new Penal Code, the general provisions of . . . Penal Code, Sec. 1.03(b) . . . do
not apply to Sec. 15.02[.]" (10) As a result, we reversed the trial court's judgment revoking the
appellant's probation for the offense of conspiracy to sell marijuana, remanded the case, and
ordered the prosecution dismissed. (11)

 We reaffirmed Moore and Baker in subsequent cases: Ex parte Lopez, (12) Ex parte
Barnes, (13) Ex parte Russell, (14) and Brown v. State. (15)

 Shortly after the Moore-Baker line of cases was issued, the Legislature added Section
4.011 to the Controlled Substances Act in 1981. (16) When enacted, Section 4.011 provided that
"[t]he provisions of Title 4, Penal Code, apply to Section 4.052 and offenses designated as
aggravated offenses under Subchapter 4 of this Act . . . ." (17) In 2003, the Legislature added a
similar provision to the Election Code, Section 1.018, titled "Applicability of Penal Code." (18) 
Section 1.018 states: "In addition to Section 1.03, Penal Code, and to other titles of the Penal
Code that may apply to this code, Title 4, Penal Code, applies to offenses prescribed by this
code." (19)

 Countering the arguments of Colyandro, Ellis, and Delay, the State argued that Moore
and Baker are distinguishable because they addressed the Controlled Substances Act, not the
Election Code, and, in the alternative, were wrongly decided. After reviewing the documents
filed by the parties, the trial judge quashed the Election Code-based conspiracy charges. The
indictment returned on September 28, 2005, was dismissed. The State then filed interlocutory
appeals challenging the trial judge's decision. (20)

 The Austin Court of Appeals affirmed the trial judge's decision. (21) The court issued a
published opinion styled State v. Delay (22) and two unpublished opinions styled State v.
Colyandro (23) and State v. Ellis, (24) which cited the court's reasoning in Delay as controlling. (25) 
In the court of appeals, the State reasserted the arguments that it had presented to the trial
judge--that Moore and Baker can be distinguished and, alternatively, were incorrectly
decided. (26)

 The court of appeals first considered the State's claim that Moore and Baker were
wrongly decided. It concluded that as an intermediate appellate court, it was without authority
to overrule this Court's precedent and was therefore bound to follow Moore and Baker. (27) But
the court did suggest that we revisit Baker, stating that "Baker appears to be based on
questionable reasoning and is arguably in conflict with the history of the criminal conspiracy
offense in Texas as well as the growing legislative trend to propagate felony offenses
throughout the various statutory codes." (28)

 Focusing on the history of Texas's criminal conspiracy law, the court stated that "Baker
was a marked departure from the generally applicable conspiracy offense that had been on the
books for ninety years." (29) The court also stated that Baker's holding was not consistent "with
the state bar committee on the revision of the penal code's comment that section 15.02(a) was
intended to 'clarify present law without substantial alteration.'" (30) Looking at the criminal
conspiracy statute and the definition of "felony" provided in Section 1.07(23) of the Penal
Code, the court added that when read together, nothing in these provisions "suggests a
legislative intent to limit conspiracy to offenses found within the penal code." (31) The court then
noted that Section 1.03(b) "does not necessarily limit the applicability of other provisions." (32) 
Last, the court observed that the Legislature has codified numerous felony offenses outside
the Penal Code and that it is "unlikely that the legislature would have intended to eliminate
criminal liability for conspiracy in such a panoply of felony offenses." (33) 

 The court then considered whether Baker is distinguishable and "should be limited in
application to the controlled substances act." (34) Rejecting the State's argument that the
reasoning we used in Moore is "inapplicable to this case because the legislative history of the
election code differs from that of the controlled substances act[,]" the court stated that "the
discussion of legislative history in Moore was not carried forward by the court of criminal
appeals in Baker." (35) Baker, the court reasoned, was based solely on an interpretation of
Section 1.03(b). (36) As a result, the court held that Baker "applies with equal force to any
offense found outside the penal code whether in the controlled substance act or the election
code" and that the trial judge correctly found "that Baker generally limits the application of
the penal code's criminal conspiracy provision to felony offenses contained in the penal
code." (37)

 The State petitioned for review, presenting the following ground for our consideration:
"The court of appeals erred in holding that, prior to September 1, 2003, the criminal
conspiracy provisions of section 15.02 of the Texas Penal Code did not apply to the felony
offense of making an illegal contribution under the Texas Election Code." We granted review. 

II. Analysis 

 Advancing the same arguments it offered in the district court and the court of appeals,
the State urges us to (1) expressly overrule Moore and Baker or (2) limit their application.

A. 

 We first address the State's argument that Moore and Baker should be limited. The
State argues that the court of appeals erred by extending Moore and Baker to offenses defined
in the Election Code and requests that we restrict Moore and Baker to inchoate offenses
involving an object offense defined in the Controlled Substances Act. 

 Title 1 of the Penal Code, labeled "INTRODUCTORY PROVISIONS," includes Chapter
1, which is designated "GENERAL PROVISIONS." (38) Section 1.03 of the Penal Code is
located in Chapter 1 of Title 1 and is titled "Effect of Code." (39) The version of Section 1.03(b)
in effect when Moore and Baker were decided stated: 

 The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by
other laws, unless the statute defining the offense provides otherwise; however,
the punishment affixed to an offense defined outside this code shall be
applicable unless the punishment is classified in accordance with this code. (40)


 In Moore, based on our reading of Section 1.03(b), we held that Section 1.03(b) 
precludes the application of the criminal attempt statute, contained in Title 4 of the Penal
Code, to offenses in the Controlled Substances Act. (41) And in line with our interpretation of
Section 1.03(b) in Moore, in Baker we held that the criminal conspiracy statute, also contained
in Title 4, does not apply to offenses in the Controlled Substances Act. (42) As the State correctly
concedes, our interpretation of Penal Code Section 1.03(b) in Moore and Baker yielded broad
implicit holdings--that the inchoate offenses contained in Title 4 do not apply to offenses
defined outside the Penal Code. Therefore, the court of appeals did not err in extending Moore
and Baker to criminal offenses defined in the Election Code, and we decline the State's
invitation to limit our holdings in those cases.

B.

 1.

 We next consider the State's contention that Moore and Baker should be overruled.

Relying on our decision in Boykin v. State, which established our principal rules for statutory
interpretation, (43) the State argues that under the plain language of Section 15.02 of the Penal
Code and the definition of "felony" in Section 1.07(a)(23) of the Penal Code, the offense of
criminal conspiracy applies to all felony offenses defined under Texas law. Continuing, the
State claims that when the plain language of Sections 1.07(a)(23) and 15.02 of the Penal Code
are considered in combination with the plain language of Sections 253.003, 253.094, and
253.104 of the Election Code, the offense of criminal conspiracy applies to the felony offense
of unlawfully making a political contribution. 

 To put the State's argument in perspective, a review of the statutes cited by the State 
is beneficial at this point. "Felony," as defined in Penal Code Section 1.07(a)(23), "means an
offense so designated by law or punishable by death or confinement in a penitentiary." (44) 
Section 15.02, Penal Code, located in Title 4, defines the offense of criminal conspiracy and
states, in relevant part: 

 (a) A person commits criminal conspiracy if, with intent that a felony be
committed:

 (1) he agrees with one or more persons that they or one or more of them
engage in conduct that would constitute the offense; and

 (2) he or one or more of them performs an overt act in pursuance of the
agreement. (45)


 Section 253.003 of the Election Code defines the offense of "Unlawfully Making or
Accepting Contribution." (46) Under Subsection (a) of Section 253.003, "[a] person may not
knowingly make a political contribution in violation of" Chapter 253 of the Election Code. (47)

Subsection (b) states that "[a] person may not knowingly accept a political contribution the
person knows to have been made in violation of" Chapter 253. (48) "A violation of Subsection (a)
or (b) is a felony of the third degree if the contribution is made in violation of Subchapter D." (49)

 Located in Subchapter D, Section 253.094, titled "Contributions and Expenditures
Prohibited," states:

 (a) A corporation or labor organization may not make a political contribution or
political expenditure that is not authorized by this subchapter.

 (b) A corporation or labor organization may not make a political contribution
or political expenditure in connection with a recall election, including the
circulation and submission of a petition to call an election.

 (c) A person who violates this section commits an offense. An offense under
this section is a felony of the third degree. (50)


 Section 253.104, also located in Subchapter D, is labeled "Contribution to Political
Party." (51) Under Subsection (b), "[a] corporation or labor organization may not knowingly make
a contribution authorized by Subsection (a) during a period beginning on the 60th day before
the date of a general election for state and county officers and continuing through the day of
the election." (52) Subsection (a) permits "[a] corporation or labor organization" to "make a
contribution from its own property to a political party to be used as provided by Chapter
257." (53) A violation of Subsection (b) is a third-degree-felony offense. (54)

 In opposition, Colyandro, Ellis, and Delay collectively argue that the plain language of
Section 1.03(b) establishes that the criminal conspiracy statute does not apply to offenses
defined outside the Penal Code unless an extra-Penal Code provision provides otherwise. And,
as a result, they contend that in 2002, Section 15.02 did not apply to violations of the Election
Code. They further claim that Moore and Baker were correctly decided and fault the State for
failing to acknowledge the Legislature's response to Moore and Baker--the addition of
Section 4.011 to the Controlled Substances Act--and the Legislature's 2003 amendment to
the Election Code, which added Section 1.018. The Legislature, they argue, could have
amended Section 1.03(b) to include Title 4, but did not.

 During oral argument, we sought clarification from the State about its position on the
various Penal Code provisions at issue. We asked whether Section 1.03(b) has the effect of
exporting only Titles 1, 2, and 3 of the Penal Code to offenses defined outside the Penal Code
unless the extra-Penal Code statute defining an offense provides otherwise. The State agreed
with this characterization of the effect of Section 1.03(b). And when questioned about whether
the definition of "felony" in the Penal Code has the effect of importing felony offenses
defined outside the Penal Code into certain offenses defined in the Penal Code, and in
particular, the criminal conspiracy statute by virtue of the statute's requirement that a person
commit the offense "with intent that a felony be committed[,]" (55) the State again agreed with this
characterization of the combined effect of the definition of felony and the criminal conspiracy
statute. 

 2. Over fourteen years after interpreting Section 1.03(b) in Moore and Baker, we issued
our decision in Boykin. (56) There, we said that when interpreting a statute to give effect to the
"collective legislative intent or purpose," we concentrate "on the literal text of the statute in
question and attempt to discern the fair, objective meaning of that text at the time of its
enactment." (57) We will give effect to the plain meaning if, "when read using the established
canons of construction relating to such text," the meaning of the text "should have been plain
to the legislators who voted on it[.]" (58) We will not apply the plain language, however, if (1) the
"application of a statute's plain language would lead to absurd consequences that the
Legislature could not possibly have intended," or (2) the language is ambiguous. (59) In those
instances, we will consult extratextual sources to reach a rational interpretation. (60)

 Although we did not invoke Boykin's rules for statutory construction when discerning
the meaning of Section 1.03(b) in Moore and Baker, our approach nevertheless conformed to
Boykin's mandate. In Moore and Baker, we focused on the literal text of Section 1.03(b) and
found that Section 1.03(b) does not apply to the criminal attempt and conspiracy statutes. (61) 
Because Section 1.03(b) references only Titles 1, 2, and 3 of the Penal Code, we concluded
that the criminal attempt and conspiracy statutes in Title 4 of the Penal Code did not apply to
offenses defined in the Controlled Substances Act. (62) Our review of the predecessor statutes
to the Controlled Substances Act in Moore was ancillary to our holding. (63) Those statutes were
reviewed solely to address the State's argument that the Legislature intended the criminal
attempt statute to apply to the Controlled Substances Act. (64) This determination is bolstered
by our subsequent decision in Baker. As the court below correctly observed, Baker's holding
was based exclusively on our "interpretation of section 1.03(b) of the penal code to limit the
applicability of title 4's conspiracy provision to offenses found within the penal code." (65)

 But given the State's arguments here, we must consider whether we reached the correct
result in Moore and Baker; specifically, whether Section 1.03(b) is determinative and
therefore precludes the application of the criminal conspiracy statute to felony offenses
defined outside the Penal Code. In doing so, we must ask: Were we remiss in considering only
Section 1.03(b), thereby failing to take into consideration the criminal conspiracy statute,
Section 15.02, Penal Code, and the definition of "felony" in Section 1.07(a)(23) of the Penal
Code in Baker? Compelling legislative ratification of our prior interpretation of Penal Code
Section 1.03(b) leads us to conclude that the answer is no. 

 When faced with a challenge to a prior judicial construction of a statute, we have long
recognized that prolonged legislative silence or inaction following a judicial interpretation
implies that the Legislature has approved of the interpretation. (66) "[W]e presume the
Legislature intends the same construction to continue to apply to a statute when the Legislature
meets without overturning that construction." (67) In recognition of this, we have, on occasion,
when reaffirming a prior judicial construction of a statute, stated that the prior interpretation
was correct when, over the course of many years, it had not been legislatively overruled. (68) 

 More recently, however, we stated that "legislative inaction does not necessarily equate
to legislative approval." (69) When implying legislative ratification, we observed that there is a
distinction between legislative inaction after judicial construction and the Legislature's
reenactment of a statute following judicial construction: 

 Certainly when a legislature reenacts a law using the same terms that have been
judicially construed in a particular manner, one may reasonably infer that the
legislature approved of the judicial interpretation. There is considerably less
force (though still some) to the argument that if a legislature does not agree
with the judicial interpretation of the words or meaning of a statute, the
legislature would surely have immediately changed the statute. (70)


Therefore, the following statement, the substance of which originated from a case before us
in 1946, remains true today: "where a statute has been reenacted by the Legislature with
knowledge of the judicial construction thereof a court would not be justified in overruling such
decision." (71)

 The Legislature's actions following Moore and Baker and their progeny demonstrate
that it has ratified our interpretation of Section 1.03(b). Since those decisions, the Legislature
has carefully crafted statutes to make offenses defined in Title 4 of the Penal Code directly
applicable to offenses defined outside the Penal Code. The Legislature has also retained extra-Penal Code criminal statutes incorporating conspiracy or attempt or both. In other instances,
the Legislature has amended or enacted extra-Penal Code criminal statutes to include either
conspiracy or attempt or both. At the same time, the Legislature has abstained from amending
Section 1.03(b) of the Penal Code to include Title 4. 

 Shortly after the Moore-Baker line of cases, in 1981, the 67th Legislature added
Section 4.011 to the Controlled Substances Act, which made Title 4 applicable to Section
4.052, the offense of illegal investment, (72) and offenses designated as aggravated under
Subchapter 4 of the Act. (73) The Legislature, therefore, did not provide for the unlimited
application of Title 4 to offenses in the Controlled Substances Act. Punishment for an offense
was designated to be "the same as the punishment prescribed for the offense that was the object
of the preparatory offense." (74) The 68th Legislature, during the 1983 Regular Session, amended
Section 4.011 to include the identical text that was added by the 67th Legislature when Section
4.011 was first enacted. (75) Accordingly, the same qualifications placed on the application of
Title 4 by the 67th Legislature remained intact when the next Legislature amended Section
4.011.

 In 1989, the 71st Legislature moved the Controlled Substances Act from the Revised
Civil Statutes to the Health and Safety Code. (76) Section 481.108 of the Health and Safety Code
is the successor statute to Section 4.011. The Legislature again provided similar limitations
on the applicability of Title 4 to offenses defined in the Controlled Substances Act. Section
481.108 stated:

 Title 4, Penal Code, applies to Section 481.126[, which defines the offense of
Illegal Expenditure and Investment,] and offenses designated as aggravated
offenses under this subchapter, except that the punishment for a preparatory
offense is the same as the punishment prescribed for the offense that was the
object of the preparatory offense. (77)


Notably, despite the addition of a provision making Title 4 applicable to specific offenses in
the Controlled Substances Act and subsequent amendments to that provision, all of which were
made during a nine-year period, the Legislature never amended Section 1.03(b) of the Penal
Code to include Title 4.

 The 73rd Legislature amended both Section 481.108 of the Health and Safety Code (78)
and Section 1.03(b) of the Penal Code in 1993. (79) Both statutes were considered and amended
pursuant to Senate Bill 1067.

 In amending Section 481.108, the Legislature further restricted the applicability of
Title 4, making it applicable only to the offense of illegal expenditure or investment as defined
in Health and Safety Code Section 481.126. As amended, Section 481.108 read as follows:

 Title 4, Penal Code, applies to Section 481.126, except that the punishment for
a preparatory offense under Section 481.126 is the punishment for a first degree
felony. (80)


The Legislature deleted the reference to offenses identified as aggravated in Section 481.108 (81)
and also deleted the designation of "aggravated offense" from various offenses defined in
Chapter 481. (82)

 Before the Legislature's 1993 amendment of Section 1.03(b), Section 1.03(b) stated:

 The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by
other laws, unless the statute defining the offense provides otherwise; however,
the punishment affixed to an offense defined outside this code shall be
applicable unless the punishment is classified in accordance with this code. (83)


 The 73rd Legislature deleted the words "of this code" from that Section. (84) It also added
Subsection (c) to Section 1.05 of the Penal Code, the "Construction of Code" statute. That
provision stated:

 (c) In this code:

 (1) a reference to a title, chapter, or section without further
identification is a reference to a title, chapter, or section of this code; 
. . . . (85)


With the addition of Subsection (c)(1) to Section 1.05, the deletion of the text "of this code"
from Section 1.03(b) indicates that the Legislature deemed the deleted text to be superfluous.
Even though Health and Safety Code Section 481.108 and Penal Code Section 1.03(b) were
reviewed and amended together, the Legislature did not amend Section 1.03(b) to include Title
4.

 During the 1995 Regular Session, the 74th Legislature amended Section 481.108 of
the Controlled Substances Act to apply to all offenses in Chapter 481. (86) As enacted, the text
of 481.108 stated: "Title 4, Penal Code, applies to an offense under this chapter." (87) Since the
1995 amendment, the text of Section 481.108 has remained unchanged. (88)

 At the same time, pursuant to Senate Bill 15, the Legislature also added provisions to
the Simulated Controlled Substances Act, the Dangerous Drugs Act, the Volatile Chemicals
Act, and the Abusable Volatile Chemicals Act to make Penal Code, Title 4 applicable. Section
482.005, which was added to the Simulated Controlled Substances Act, made Title 4 of the
Penal Code applicable to offenses under Chapter 482. (89) Section 483.053 was added to the
Dangerous Drugs Act. (90) Section 483.053 made Penal Code Title 4 applicable to an offense
under Subchapter C, titled "Criminal Penalties." (91) Section 484.008, which made Title 4
applicable to offenses under Chapter 484, was added to the Volatile Chemicals Act. (92) Finally,
Section 485.039 was added to the Abusable Volatile Chemicals Act and provided: "Title 4,
Penal Code, applies to an offense under [Subchapter C, Criminal Penalties]." (93) Despite these
combined 1995 acts, no amendment was made to Section 1.03(b) to include Title 4. 

 In 2001, the Legislature repealed Section 484.004 from the Volatile Chemicals Act
along with numerous other statutes contained in that Act. (94) And finally, in 2003, the
Legislature amended the Election Code to make Title 4 of the Penal Code applicable to
offenses defined in the Election Code. (95) Again, the Legislature did not amend Section 1.03(b)
to include Title 4.

 The Legislature has clearly delineated exactly when Title 4 of the Penal Code will apply
to offenses defined outside of the Penal Code. In the thirty years since Moore and Baker were
decided, the Legislature has not amended Section 1.03(b) to include Title 4. Instead, it has
taken an unmistakable piecemeal approach when it comes to making the offenses contained in
Title 4 of the Penal Code applicable to extra-Penal Code criminal offenses. Although we
generally presume that the Legislature was aware of our interpretation of a particular statute
when it later amends or reenacts that statute after we have rendered a judicial construction, (96)
in this instance, we can impute actual knowledge. Significantly, each of these acts is in accord
with our decisions in Baker and Moore, and when considered collectively, they
overwhelmingly show continued legislative approval of our interpretation of Penal Code
Section 1.03(b).

 Consistent with the approach that the Legislature has taken when making Title 4
applicable to offenses defined outside the Penal Code, the Legislature has maintained and
enacted statutes proscribing specific felony offenses involving conspiracy in criminal statutes
located outside the Penal Code. Examples of those statutes can be found in the Alcoholic
Beverage Code, (97) the Texas Free Enterprise and Antitrust Act of 1983, (98) the State Lottery
Act, (99) and the Transportation Code, (100) as well as the statute defining the offense of sedition in
the Government Code. (101) Additionally, from 1997 to 2005, Chapter 36 of the Human
Resources Code, titled Medicaid Fraud Prevention, contained a provision prohibiting felony
conspiracy. Subsection (9) of Section 36.002, which defines unlawful acts, states that it is
unlawful for a person to "knowingly or intentionally enter[] into an agreement, combination,
or conspiracy to defraud the state by obtaining or aiding another person in obtaining an
unauthorized payment or benefit from the Medicaid program or a fiscal agent[.]" (102) Until it was
repealed in 2005, Section 36.131, titled criminal offense, provided that an offense under
Section 36.002 was subject to first-, second-, and third-degree-felony-level punishments based
on "the value of any payment or monetary or in-kind benefit provided under the Medicaid
program, directly or indirectly, as a result of the unlawful act[.]" (103)

 A survey of criminal statutes located outside of the Penal Code also reveals that the
Legislature has retained and enacted statutes proscribing specific felony offenses involving
attempt or amended existing statutes to include attempt. We have already cited to three of
those statutes. Section 15.05(b) of the Business and Commerce Code makes it unlawful for
a person to "attempt to monopolize" "any part of trade or commerce." (104) This offense is
designated as a felony. (105) And the felony offense of sedition, found in Section 557.001(a) of
the Government Code, includes attempt among the types of conduct prohibited by that
statute. (106) Section 542.303 of the Transportation Code, which defines inchoate offenses,
states that it is an offense to attempt to commit an offense defined in Subtitle C. (107) Two
examples of offenses that are subject to felony punishment in Subtitle C include Subsection
(b) of Section 548.603 (108) and Section 545.420. (109) 

 Section 481.129(a)(5) of the Controlled Substances Act contains the most historically-noteworthy example. (110) In Moore, the appellant was charged with attempting to violate Section
4.09(a)(3) of the Controlled Substances Act, (111) the forerunner to Section 481.129(a)(5). At
that time, Section 4.09(a)(3) stated that "[i]t is unlawful for any person knowingly or
intentionally to acquire or obtain possession of a controlled substance by misrepresentation,
fraud, forgery, deception, or subterfuge[.]" (112) In 1978, before the Legislature made Title 4
directly applicable to certain offenses in the Controlled Substances Act in 1981, (113) the 66th
Legislature added "attempt to acquire or obtain" to Section 4.09(a)(3). (114) This amendment was
clearly a direct response to Moore. Even though this provision was subsequently amended and
moved (115) and the Legislature expanded the scope of offenses that Penal Code Title 4 applies
to in the Controlled Substances Act in 1995, (116) the current version of the statute still includes
attempt. (117)

 Other examples of statutes prohibiting criminal attempt are located in the Election
Code, (118) the State Lottery Act, (119) the Government Code, (120) Title 3, Chapter 195 of the Health
and Safety Code, (121) and the Occupations Code. (122)

 Taken together, these legislative acts establish that, over the course of the past thirty
years, the Legislature has repeatedly approved of our interpretation of Section 1.03(b) of the
Penal Code that was rendered in Moore and Baker. From this we conclude that our prior
construction of Section 1.03(b) is correct. Overruling that construction now would be
unjustified; we would impermissibly launch ourselves into the role of super-legislators,
disturbing the State's legislatively-established penal laws. 

 Adhering to our prior decisions, we hold that Section 1.03(b) controls the application
of Penal Code provisions to criminal offenses defined outside the Penal Code. It directs the
export of the provisions contained only in Titles 1, 2, and 3 of the Penal Code to criminal
offenses defined outside the Penal Code and contemporaneously bars the import of extra-Penal Code offenses to offenses defined in Titles 4 through 11 of the Penal Code. The
offenses defined in Title 4 of the Penal Code apply to offenses defined outside the Penal Code
only where the Legislature has designated that Title 4 is applicable via legislative action like
the amendments made to the Controlled Substances Act, the Simulated Controlled Substances
Act, the Dangerous Drugs Act, the Abusable and Volatile Chemicals Act, and the Election
Code. Because Title 4 of the Penal Code, and therefore the Penal Code's criminal conspiracy
statute, did not apply to offenses defined in the Election Code prior to the inclusion of Section
1.018 to the Election Code in 2003, the court of appeals did not err in affirming the trial
judge's decision to quash the Election Code-based conspiracy charges against Colyandro, Ellis,
and Delay.

III. Conclusion

 Having determined that our holdings in Moore and Baker cannot be restricted to
offenses defined in the Controlled Substances Act and that our interpretation of Section
1.03(b) of the Penal Code in those cases was correct, we affirm the judgment of the Third
Court of Appeals upholding the trial judge's decision to quash the Election Code-based
conspiracy charges against Colyandro, Ellis, and Delay.


DATE DELIVERED: June 27, 2007

PUBLISH

1. 545 S.W.2d 140 (Tex. Crim. App. 1976).
2. 547 S.W.2d 627 (Tex. Crim. App. 1977).
3. 545 S.W.2d at 141. 
4. Id. at 141-42.
5. Id. at 142.
6. Id. at 141.
7. Id. at 142.
8. Id. 
9. 547 S.W.2d at 628.
10. Id. at 629. 
11. Id.
12. 549 S.W.2d 401, 402 (Tex. Crim. App. 1977).
13. 547 S.W.2d 631, 632 (Tex. Crim. App. 1977).
14. 561 S.W.2d 844, 844-45 (Tex. Crim. App. 1978).
15. 568 S.W.2d 137, 138 (Tex. Crim. App. 1978).
16. Tex. Rev. Civ. Stat. Ann. art. 4476-15, § 4.011 (Vernon Supp. 1981), added by
Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981 (current version at Tex. Health &
Safety Code Ann. § 481.108 (Vernon 2003) (stating "Title 4, Penal Code, applies to an
offense under this chapter.")); Woods v. State, 801 S.W.2d 932, 942 (Tex. App.--Austin
1990, pet. ref'd). 
17. Tex. Rev. Civ. Stat. Ann. art. 4476-15, § 4.011.
18. Tex. Elec. Code Ann. § 1.018 (Vernon Supp. 2004), added by Acts 2003, 78th
Leg., ch. 393, § 2, eff. Sept. 1, 2003. 
19. Id.
20. Tex. Code Crim. Proc. art. 44.01(a)(1).
21. State v. Delay, 208 S.W.3d 603, 607-08 (Tex. App.--Austin 2006); State v.
Colyandro, Nos. 03-05-00811-CR, 03-05-00812-CR, 03-05-00813-CR, 2006 Tex. App.
LEXIS 3195, at *1-2 (Tex. App.--Austin Apr. 19, 2006) (not designated for publication);
State v. Ellis, Nos. 03-05-00814-CR, 03-05-00815-CR, 03-05-00816-CR, 2006 Tex.
App. LEXIS 3192, at *1-2 (Tex. App.--Austin Apr. 19, 2006) (not designated for
publication).
22. Delay, 208 S.W.3d at 603.
23. Colyandro, 2006 Tex. App. LEXIS 3195.
24. Ellis, 2006 Tex. App. LEXIS 3192.
25. Colyandro, 2006 Tex. App. LEXIS 3195, at *2; Ellis, 2006 Tex. App. LEXIS
3192, at *2. 
26. Delay, 208 S.W.3d at 604, 607.
27. Id. at 607.
28. Id. 
29. Id. at 606 (citing Act of Feb. 4, 1884, 18th Leg., 1st C.S., ch. 14, § 1, 1884 Tex.
Gen. Laws 25, 25). 
30. Id. (citing Texas Penal Code, A Proposed Revision § 15.02 cmt. at 137 (Final
Draft October 1970).
31. Id.
32. Id. (citing Tex. Penal Code Ann. § 1.03(b)). 
33. Id.
34. Id. at 607.
35. Id.
36. Id. 
37. Id. at 607-08.
38. Acts 1973, 63rd Leg., ch. 399, § 1, eff. Jan. 1, 1974 (current version at Tex.
Penal Code Ann. § 1.03(b) (Vernon 2003)).
39. Id.
40. Id.
41. 545 S.W.2d at 142.
42. 547 S.W.2d at 629.
43. 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).
44. Tex. Penal Code Ann. § 1.07(a)(23) (Vernon Supp. 2002).
45. Tex. Penal Code Ann. § 15.02 (Vernon Supp. 2002).
46. Tex. Elec. Code Ann. § 253.003 (Vernon Supp. 2002).
47. Tex. Elec. Code Ann. § 253.003(a).
48. Tex. Elec. Code Ann. § 253.003(b).
49. Tex. Elec. Code Ann. § 253.003(e).
50. Tex. Elec. Code Ann. § 253.094 (Vernon Supp. 2002).
51. Tex. Elec. Code Ann. § 253.104 (Vernon Supp. 2002).
52. Tex. Elec. Code Ann. § 253.104(b).
53. Tex. Elec. Code Ann. § 253.104(a). 
54. Tex. Elec. Code Ann. § 253.104(c).
55. Tex. Penal Code Ann. § 15.02(a).
56. 818 S.W.2d 782.
57. Id. at 785.
58. Id.
59. Id. (emphasis in original).
60. Id. at 785-86.
61. Moore, 545 S.W.2d at 142; Baker, 547 S.W.2d at 629.
62. Moore, 545 S.W.2d at 142; Baker, 547 S.W.2d at 629.
63. Moore, 545 S.W.2d at 142.
64. Id. at 141-42.
65. Delay, 208 S.W.3d at 607; see also Baker, 547 S.W.2d at 628-29.
66. Moore v. State, 868 S.W.2d 787, 790 (Tex. Crim. App. 1993) (citing Watson v.
State, 532 S.W.2d 619, 622 (Tex. Crim. App. 1976); Lockhart v. State, 150 Tex. Crim.
230, 235, 200 S.W.2d 164, 167-68 (1947) (op. on reh'g)); State v. Hall, 829 S.W.2d 184,
187 (Tex. Crim. App. 1992); Lewis v. State, 58 Tex. Crim. 351, 361-62, 127 S.W. 808,
812 (1910); see also Watson v. State, 900 S.W.2d 60, 67 (Tex. Crim. App. 1995) (Clinton,
J., concurring); Garcia v. State, 829 S.W.2d 796, 803 n.2 (Tex. Crim. App. 1992) (Miller,
J., concurring).
67. Awadelkariem v. State, 974 S.W.2d 721, 725 (Tex. Crim. App. 1998) (citing
Hardy v. State, 963 S.W.2d 516, 523 (Tex. Crim. App. 1997)); see also Lewis, 58 Tex.
Crim. at 361, 127 S.W. at 812. 
68. Connolly v. State, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999); Hall, 829
S.W.2d at 187; see also Smith v. State, 5 S.W.3d 673, 678 (Tex. Crim. App. 1999).
69. State v. Medrano, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002).
70. Id. at 902 (emphasis in original).
71. Collier v. Poe, 732 S.W.2d 332, 345 (Tex. Crim. App. 1987) (citing Brown v.
State, 150 Tex. Crim. 386, 389, 196 S.W.2d 819, 821 (1946)).
72. Tex. Rev. Civ. Stat. art. 4476-15, § 4.052 (Vernon Supp. 1981). 
73. Added by Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981.
74. Id. 
75. Acts 1983, 68th Leg., ch. 425, § 4, eff. Aug. 29, 1983; see also 68th Leg., ch.
425, H.B. 1191 at 2361-62 (noting reenactment of Section 4.011 and larger effort to
revise, recodify, and reenact substantive and procedural laws in the Controlled Substances
Act).
76. Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989; see also Marks v. State,
830 S.W.2d 113, 114 n.1 (Tex. Crim. App. 1992).
77. Tex. Health & Safety Code Ann. § 481.108 (Vernon 1990).
78. Acts 1993, 73rd Leg., ch. 900, § 2.02, eff. Sept. 1, 1994.
79. Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.
80. Tex. Health & Safety Code Ann. § 481.108 (Vernon Supp. 1994).
81. Acts 1993, 73rd Leg., ch. 900, § 2.02, eff. Sept. 1, 1994.
82. Id. (amending Tex. Health & Safety Code Ann. §§ 481.112(c), 481.113(c),
481.114(c), 481.115(c), 481.116(c), 481.117(c), 481.118(c), 481.120(c), 481.121(c),
481.122(a)).
83. Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.
84. Id.
85. Id.
86. Acts 1995, 74th Leg., ch. 318, § 36, eff. Sept. 1, 1995.
87. Tex. Health & Safety Code Ann. § 481.108 (Vernon Supp. 1996).
88. Tex. Health & Safety Code Ann. § 481.108 (Vernon 2003; Vernon Supp.
2006).
89. Tex. Health & Safety Code Ann. § 482.005 (Vernon Supp. 1996; Vernon
2003), added by Acts 1995, 74th Leg., ch. 318, § 39, eff. Sept. 1, 1995.
90. Tex. Health & Safety Code Ann. § 483.053 (Vernon Supp. 1996; Vernon
2003), added by Acts 1995, 74th Leg., ch. 318, § 40, eff. Sept. 1, 1995.
91. Id.
92. Tex. Health & Safety Code Ann. § 484.008 (Vernon Supp. 1996), added by
Acts 1995, 74th Leg., ch. 318, § 42, eff. Sept. 1, 1995.
93. Tex. Health & Safety Code Ann. § 485.039 (Vernon Supp. 1996), added by
Acts 1995, 74th Leg., ch. 318, § 43, eff. Sept. 1, 1995, (currently codified at Tex. Health
& Safety Code Ann. § 485.038 (Vernon 2003), Acts 2001, 77th Leg., ch. 1463, § 2, eff.
Sept. 1, 2001).
94. Acts 2001, 77th Leg., ch. 1463, § 4, eff. Sept. 1, 2001; see also Acts 2001, 77th
Leg., ch. 459, § 2, eff. Sept. 1, 2001. 
95. Tex. Elec. Code Ann. § 1.018 (Vernon Supp. 2006), added by Acts 2003, 78th
Leg., ch. 393, § 2, eff. Sept. 1, 2003.
96. Moore v. State, 868 S.W.2d 787, 790 (Tex. Crim. App. 1993); Grunsfeld v.
State, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992).
97. Tex. Alco. Bev. Code Ann. § 104.03 (Vernon 1995) (conspiracy; accepting
unlawful benefit), Acts 1977, 65th Leg., ch. 194, § 1, eff. Sept. 1, 1977, (previously
codified at Tex. Penal Aux. Laws art. 666-17(26) (Vernon 1974) (Acts 1949, 51st Leg.,
ch. 543, § 7, eff. Oct. 4, 1949)); Tex. Alco. Bev. Code Ann. § 206.06 (Vernon 1995)
(forgery or counterfeiting), Acts 1977, 65th Leg., ch. 194, § 1, eff. Sept. 1, 1977,
(previously codified at Tex. Penal Aux. Laws art. 666-28 (Vernon 1974) (Acts 1937,
45th Leg., ch. 448, § 36, eff. Aug. 21, 1937)).
98. Tex. Bus. & Com. Code Ann. § 15.05 (Vernon 2002) (unlawful acts), amended
by Acts 1983, 68th Leg., ch. 519, § 1, eff. Aug. 29, 1983, (previously codified at Tex. Bus.
& Com. Code § 15.04(a) (Vernon Supp. 1968), Acts 1967, 60th Leg., ch. 785, § 1, eff.
Sept. 1, 1967); Tex. Bus. & Com. Code Ann. § 15.22 (Vernon 2002) (criminal suits),
amended by Acts 1983, 68th Leg., ch. 519, § 3, eff. Aug. 29, 1983) (previously codified at
Tex. Bus. & Com. Code § 15.33 (Vernon Supp. 1968), Acts 1967, 60th Leg., ch. 785, § 1,
eff. Sept. 1, 1967).
99. Tex. Gov't Code Ann. § 466.313 (Vernon 2004) (conspiracy), added by Acts
1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; Tex. Gov't Code Ann. § 466.303
(Vernon 2004) (sale of ticket by unauthorized person), added by Acts 1993, 73rd Leg., ch.
107, § 4.03(b), eff. Aug. 30, 1993; Tex. Gov't Code Ann. § 466.3054 (Vernon 2004)
(group purchase arrangements), added by Acts 1995, 74th Leg., ch. 76, § 6.38, eff. Sept. 1,
1995; Tex. Gov't Code Ann. § 466.306 (Vernon 2004) (forgery; alteration of ticket),
added by Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; Tex. Gov't Code
Ann. § 466.307 (Vernon 2004) (influencing selection of winner), added by Acts 1993,
73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; Tex. Gov't Code Ann. § 466.308
(Vernon 2004) (claiming lottery prize by fraud), amended by Acts 1995, 74th Leg., ch. 76,
§ 6.39, eff. Sept. 1, 1995, added by Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30,
1993; Tex. Gov't Code Ann. § 466.309 (Vernon 2004) (tampering with lottery
equipment), added by Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; Tex.
Gov't Code Ann. § 466.310 (Vernon 2004) (certain transfers of claims), added by Acts
1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993.
100. Tex. Transp. Code Ann. § 542.303(a) (Vernon 1999) (inchoate offenses
applicable to offenses in subtitle C, which includes chapters 541-53), Acts 1995, 74th
Leg., ch. 165, § 1, eff. Sept. 1, 1995, (previously codified at Tex. Rev. Civ. Stat. § 145
(Vernon 1948) (parties to a crime), Acts 1947, 50th Leg., ch. 421, art. XVII, eff. Sept. 4,
1947); Tex. Transp. Code Ann. § 548.603(b), (d) (Vernon 1999) (fictitious or
counterfeit inspection certificate or insurance document) (offense defined in subsection
(b) and text of subsection (d) designating offense in subsection (b) as either a third- or
second-degree felony), added by Acts 1997, 75th Leg., ch. 1069, § 16, eff. June 19, 1997;
Tex. Transp. Code Ann. § 545.420(a), (g)-(h) (Vernon Supp. 2006) (racing on highway)
(subsections (g) and (h) making offense subject to either a third- or second-degree-felony
punishment), added by Acts 2003, 78th Leg., ch. 535, § 1, Sept. 1, 2003, (previously
codified at Tex. Rev. Civ. Stat. art. 6701(d), § 185 (Vernon Supp. 1972), added by Acts
1971, 62nd Leg., ch. 83, § 94, eff. Aug. 30, 1971).
101. Tex. Gov't Code Ann. § 557.001 (Vernon 2004), Acts 1993, 73rd Leg., ch.
268, § 1, eff. Sept. 1, 1993, (previously codified at Tex. Rev. Civ. Stat. art. 6889-3A, §§
5(3) (unlawful acts), 6 (punishment for violations) (Vernon Supp. 1956), Acts 1954, 53rd
Leg., 1st C.S., ch. 3, eff. Apr. 15, 1954).
102. Tex. Hum. Res. Code Ann. § 36.002(9) (Vernon 2001) (unlawful acts), added
by Acts 1995, 74th Leg., ch. 824, § 1, eff. Sept. 1, 1995, amended by Acts 1997, 75th
Leg., ch. 1153, § 4.03, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 233, § 4, eff. Sept. 1,
1999.
103. Tex. Hum. Res. Code Ann. § 36.131(b)(5)-(7) (Vernon 2001) (criminal
offense), added by Acts 1997, 75th Leg., ch. 1153, § 4.09, eff. Sept. 1, 1997, repealed by
Acts 2005, 79th Leg., ch. 806, § 19, eff. Sept. 1, 2005.
104. Tex. Bus. & Com. Code Ann. § 15.05(b); see also text accompanying note 98
supra. 
105. Tex. Bus. & Com. Code Ann. § 15.22(a); see also text accompanying note 98
supra. 
106. Tex. Gov't Code Ann. § 557.001(a)-(b); see also text accompanying note 101
supra.
107. Tex. Transp. Code Ann. § 542.303(a); see also text accompanying note 100
supra. 
108. Tex. Transp. Code Ann. § 548.603(b), (d); see also text accompanying note
100 supra. 
109. Tex. Transp. Code Ann. § 545.420(a), (g)-(h); see also text accompanying note
100 supra. 
110. Tex. Health & Safety Code Ann. § 481.129(a)(5), (d) (Vernon 2003)
(offense: fraud), amended by Acts 2001, 77th Leg., ch. 251, § 23, eff. Sept. 1, 2001,
(previously codified at Tex. Health & Safety Code § 481.129(a)(4) (Vernon 1990),
added by Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989); Tex. Rev. Civ. Stat. art.
4476-15, § 4.09(a)(3) (Vernon Supp. 1986), amended by Acts 1985, 69th Leg., § 11, eff.
Sept. 1, 1985; Tex. Rev. Civ. Stat. art. 4476-15, § 4.09(a)(3), (b) (Vernon Supp. 1979),
amended by Acts 1978, 66th Leg., ch. 90, § 6, eff. May 2, 1979. 
111. 545 S.W.2d at 141.
112. Tex. Rev. Civ. Stat. art. 4476-15, § 4.09(a)(3) (Vernon 1974).
113. Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981.
114. Tex. Rev. Civ. Stat. art. 4476-15, § 4.09(a)(3) (Vernon Supp. 1979), amended
by Acts 1979, 66th Leg., ch. 90, § 6, eff. May 2, 1979; see also Ex parte Holbrook, 609
S.W.2d 541, 542 (Tex. Crim. App. 1980) (observing that Section "4.09(a)(3) of the Act was
amended in 1979 to specifically include the 'attempt to acquire or obtain possession of a
controlled substance' in the description of offenses under that section."). 
115. Acts 1985, 69th Leg., ch. 227, § 10, eff. Sept. 1, 1985; Acts 1989, 71st Leg., ch.
678, § 1, eff. Sept. 1, 1989; Acts 2001, 77th Leg., ch. 251, § 23, eff. Sept. 1, 2001.
116. Acts 1995, 74th Leg., ch. 318, § 36, eff. Sept. 1, 1995.
117. Tex. Health & Safety Code Ann. § 481.129(a)(5) (Vernon 2003). 
118. Tex. Elec. Code Ann. § 2.054 (Vernon 2003) (coercion against candidacy
prohibited), added by Acts 1995, 74th Leg., ch. 667, § 1, eff. Sept. 1, 1995.
119. Tex. Gov't Code Ann. § 466.307 (Vernon 2004) (influencing selection of
winner), added by Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993, (previously
codified at Tex. Rev. Civ. Stat. art. 179g, § 4.03(a)(2), (b) (Vernon Supp. 1992), added
by Acts 1991, 72nd Leg., 1st C.S., ch. 6, § 2, eff. Nov. 5, 1991); Tex. Gov't Code Ann. §
466.308 (Vernon 2004) (claiming lottery prize by fraud) (subsections (b) and (c)(1), (2),
amended by Acts 1995, 74th Leg., ch. 76, § 6.39, eff. Sept. 1, 1995), added by Acts 1993,
73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993, (previously codified at Tex. Rev. Civ.
Stat. art. 179g, § 4.03(c), (d) (Vernon Supp. 1992), added by Acts 1991, 72nd Leg., 1st
C.S., ch. 6, § 2, eff. Nov. 5, 1991).
120. Tex. Gov't Code Ann. § 557.011 (Vernon 2004) (sabotage), added by Acts
1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993, (previously codified at Tex. Rev. Civ.
Stat. art. 6889-3, § 5 (Vernon Supp. 1952), Acts 1951, 52nd Leg., ch. 8, eff. Feb. 27,
1951); Tex. Gov't Code Ann. § 557.012 (Vernon 2004) (capital sabotage), added by
Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993, (previously codified at Tex. Rev.
Civ. Stat. art. 6889-3, § 5 (Vernon Supp. 1952), Acts 1951, 52nd Leg., ch. 8, eff. Feb. 27,
1951); Tex. Gov't Code Ann. § 821.101(b) (Vernon 2004) (conversion of funds; fraud),
amended by Acts 1989, 71st Leg., ch. 179, § 1, eff. Sept. 1, 1989, (previously codified at
Tex. Rev. Civ. Stat. tit. 110B, § 31.101 (Vernon Supp. 1984), Acts 1981, 67th Leg., ch.
453, § 1, eff. Sept. 1, 1981; Tex. Rev. Civ. Stat. art. 2922-1.06 (Vernon Supp. 1970),
Acts 1969, 61st Leg., ch. 41, § 1, eff. Mar. 31, 1969). But see Tex. Rev. Civ. Stat. art.
2922-1, § 10 (Vernon Supp. 1950), Acts 1949, 51st Leg., ch. 139, art. IX , eff. May 10,
1949.
121. Tex. Health & Safety Code Ann. § 195.003(d), (f) (Vernon 2001) (false
records), added by Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989, amended by Acts
1991, 72nd Leg., 1st C.S., ch. 15, § 5.15, eff. Sept. 1, 1991, (previously codified at Tex.
Rev. Civ. Stat. art. 4477c, § 2(a)(3), (b) (Vernon Supp. 1979), Acts 1979, 66th Leg., ch.
146, § 1, eff. May 11, 1979, repealed by Acts 1989, 71st Leg., ch. 678, § 13; Tex. Rev.
Civ. Stat. art. 4477c (Vernon 1974), Acts 1973, 63rd Leg., ch. 367, § 2, eff. June 12,
1973; Tex. Penal Code art. 781(a) (Vernon 1936)).
122. Tex. Occ. Code Ann. § 2153.357 (Vernon 2004) (criminal offense; obtaining
license by fraud), added by Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999,
(previously codified at Tex. Rev. Civ. Stat. art. 8817, § 8(2) (Vernon Supp. 1993), Acts
1993, 73rd Leg., ch. 486, § 1.15, eff. Sept. 1, 1993; Tex. Rev. Civ. Stat. art. 8817, § 8(2)
(Vernon Supp. 1990) (adding attempt), Acts 1989, 71st Leg., ch. 1096, § 14, eff. Sept. 1,
1989; Tex. Rev. Civ. Stat. art. 8817, § 8(2) (Vernon 1984), Acts 1981, 67th Leg., ch.
389, §§ 33, 39, eff. Jan. 1, 1982; Tex. Rev. Civ. Stat., Title 122A, Taxation--General ,
art. 13.17, § 8(6) (Vernon Supp. 1970), Acts 1969, 61st Leg., ch. 497, § 1, eff. Sept. 1,
1969); Tex. Occ. Code Ann. § 2153.359(a)(2), (b) (Vernon 2004) (criminal offense;
prohibited transactions), added by Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1. 1999
(previously codified at Tex. Rev. Civ. Stat. art. 8817, § 26(1)-(3) (Vernon 1984), Acts
1981, 67th Leg., ch. 389, §§ 33, 39, eff. Jan. 1, 1982, Acts 1981, 67th Leg., ch. 770, § 7,
eff. Sept. 1, 1981; Tex. Rev. Civ. Stat., Title 122A, Taxation--General, art. 13.17, §
27(4) (Vernon Supp. 1970), Acts 1969, 61st Leg., ch. 497, § 1, eff. Sept. 1, 1969).